John D. Bennett, S.
This is a discovery proceeding in which the executor seeks to recover from the widow the proceeds of a joint checking account in the name of the decedent and his wife; the proceeds of a $10,000 check dated October 21, 1960; and the further sum of $5,000 which it is alleged were funds *921 of the decedent deposited by respondent to her personal account on September 8,1961.
On March 13, 1958, shortly before the decedent’s marriage to respondent, his second wife, a joint checking account was opened in the Meadow Brook National Bank in the names of the decedent and the respondent payable to either or the survivor.
On June 14, 1960, the decedent borrowed $20,000 from the Meadow Brook National Bank and the net proceeds of this loan, amounting to $19,731.37, were credited to the joint checking account with his wife in the Meadow Brook National Bank. The following day, June 15, when the balance in the joint checking account amounted to $32,963.24, the decedent drew a check in the sum of $30,000 against the joint checking account and deposited the proceeds of such check in a personal bank account in the Chemical Bank New York Trust Co. in New York City.
Beginning in September, 1960, the decedent became ill and was hospitalized for the first time on October 13. On October 19, he was discharged and remained at home until October 26, 1960. During this latter period his doctor suggested that he discontinue his business activities. As a consequence of this advice, the decedent commenced to call in various loans he had made. By October 26, 1960, the date when the decedent re-entered the hospital for the second time, he had wound up his business affairs by receiving a number of checks which were delivered to his home.
The decedent’s son-in-law, Seymour Davis, testified that on October 19, 1960, after the decedent had been discharged from the hospital for the first time, the decedent informed his wife that he wanted the Meadow Brook Bank indebtedness paid off with the checks coming in, and also told his wife that such checks were to be given to Mr. Davis to be deposited in the decedent’s personal checking account in New York City. At another conversation on October 23 to which he was a witness, the respondent is alleged to have said in the decedent’s presence that instead of giving the checks piecemeal to Mr. Davis, she would accumulate them temporarily in their joint checking account in the Meadow Brook National Bank and when they were all accumulated, she would then give one check to Mr. Davis to be deposited in the New York City account.
Thereafter on October 24, the respondent deposited the sum of $33,793.75, representing the proceeds of six checks received by the decedent, in the Meadow Brook National Bank joint *922 checking account. One of the checks received by the decedent from Irving Rosenbaum & Co. in the amount of $10,000 was deposited by respondent directly to her own personal savings account. The respondent alleges that this check was a gift by the decedent to her and that the indorsement thereon is in the decedent’s handwriting.
Mr. Davis testified that, on many occasions after October 23, he asked the respondent about the checks which were to be turned over to him and that the respondent denied that she had accumulated all such checks.
On October 26, 1960, the date the decedent re-entered the hospital for the second time, the respondent withdrew $10,000 from the joint checking account and deposited the proceeds in another savings account which she opened in her name. Following a serious operation, the decedent returned home on November 19 apparently still very ill. Mr. Davis stated that on his last return, the decedent became angry upon discovering that the funds in the joint checking account had not been transferred to Mr. Davis for redeposit in the New York City account, and also remarked that there was a $10,000 shortage in the joint checking account. The respondent is alleged to have replied to the decedent that there must be an error in addition and that she would check it.
On November 28,1960, the day before the decedent’s death, the respondent withdrew an additional $11,000 from the joint checking account, $10,000 of which was redeposited by her in a personal savings account. As a result of the total withdrawals of $21,000 by the respondent, a balance was left in the joint checking account of $12,816.83.
Following the decedent’s death, and as a result of claims both by the respondent and the executor to the balance in the joint checking account, the bank refused payment. The respondent thereupon commenced an action in the Supreme Court against the bank for the recovery of the balance on deposit and in such action the bank interpleaded the executor. In that action, the executor’s answer was stricken and judgment granted in favor of the respondent as the result of the executor’s default in failing to appear for an examination before trial pursuant to order. The judgment, which awards the sum of $12,816.83 to the respondent, together with interest, was affirmed by the Appellate Division.
At the conclusion of the petitioner’s case, the respondent moved to dismiss the proceeding for failure to prove a prima facie case and on the ground of res judicata. The defense of res judicata having been properly raised in the amended answer, the *923 court is of the opinion that it may at this time grant summary judgment if warranted and to the extent indicated by the facts.
It is well settled that a judgment entered after a default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one entered after an answer and contest (Barber v. Kendall, 158 N. Y. 401; Adamik v. Adamik, 190 Misc. 851; 77 ALR 2d 1410).
That the judgment here is one based on default is evident from a reading of the decision and order specifically granting leave to enter a “ default ” judgment and the practice of entering a default judgment following the striking of a pleading because of a failure to appear for an examination is in accord with the authorities (3 Freeman, Judgments, § 1275, p. 2650).
The question, however, is to what extent the Supreme Court judgment is conclusive in this proceeding. To have succeeded in the Supreme Court action, the widow would have been required to establish that the joint account was in fact a true joint account, although she would have been assisted by a rebuttable presumption applicable to commercial accounts (former Banking Law, § 134, subd. 3, present Banking Law, § 675, subd. [a]). That fact, therefore, is established by the judgment and is conclusive here. This, of course, is not too important since the executor concedes that at its creation in 1958 the account was intended to be a true joint account. This fact, parenthetically, is also supported by the evidence here. Petitioner’s primary concern relates to the $33,793.75 deposit which he urges was never intended to be placed other than temporarily in the joint checking account. Here again the court is of the opinion that the Supreme Court judgment bars a redetermination of this question. Necessarily, the $12,816.83 awarded the respondent in the Supreme Court action, and which represented funds on deposit at decedent’s death, at one time formed some part of the $33,793.75 deposit and accordingly an essential finding to support the judgment would be the conclusion that the $33,793.75 formed a valid part of the joint account. Even were this not so, while it may be that the decedent never intended such deposit to be placed in the joint checking account other than temporarily, the fact remains that such deposit was made and consciously acquiesced in by the decedent. This is clear not only from the petitioner’s own witnesses, but from the check register book which it is conceded appears to contain decedent’s handwriting in the balance column through the deposit in question.
Former subdivision 3 of section 134 of the Banking Law and present section 675 (subd. [a]) of the Banking Law, both refer to the presumption afforded joint bank accounts in statutory *924 form and extend such presumptions to include ‘1 any additions thereto made, by either of such persons. ’ ’ It accordingly follows that the sum of $33,793.75 deposited to the joint checking account on October 24,1960 became a valid part of such account.
Although the Supreme Court judgment has determined that the respondent is entitled to the balance in the joint account remaining at the decedent’s death, no determination, and in fact no issue, was presented with regard to the various withdrawals from the joint checking account prior to the decedent’s death.
Not only does the estate complain of the widow’s withdrawal of $21,000 commencing at a time when the account totaled $37,667.79, but the widow also complains of the decedent’s withdrawal of $30,000 on June 15, 1960. The parties have consented that this issue also be decided by the court. This latter withdrawal of $30,000 was apparently intended to be concealed by the decedent, since the entry in the check register book refers only to a withdrawal of $20,000. Check number 425 in the amount of $30,000 was not entered in the check register book.
As stated by the court in Matter of Bricker v. Krimer (13 N Y 2d 22, 27): “ [w]hen a joint tenancy is created, each joint tenant has the right as a joint owner of the bank account to withdraw a moiety (half) or less than a moiety for his own use and thus destroy the joint tenancy as to such withdrawals (Matter of Suter, 258 N. Y. 104). A joint tenant who withdraws a sum in excess of his moiety is liable to the other joint tenant for the excess so withdrawn ”.
At the time of the decedent’s withdrawal of $30,000 from the joint account, the said checking account balance amounted to $32,963.24. Unquestionably at that point the decedent had withdrawn more than his one-half interest from the joint checking account and was liable to the respondent in the amount of $13,518.38, provided such withdrawal was made without her consent or acquiescence (Russo v. Russo, 17 A D 2d 129). However, the subsequent addition to the joint checking account of the sum of $33,793.75 will be construed by the court in any event as a satisfaction of such possible liability of the decedent to the extent of one half thereof, which amount would be in excess of the $13,518.38 mentioned above.
Prior to the withdrawals by the respondent amounting to $21,000, the balance in the account was $37,667.79. It would appear, therefore, that the respondent had withdrawn more than her moiety, or one-half share, to the extent of $2,166.10, and she is directed to return such amount to the estate. Except as indicated, all other claims by the petitioner to the proceeds of the joint checking account are dismissed.
*925 The question of whether the alleged transfer of the $10,000 check constituted a gift to the respondent is a matter upon which the respondent has the burden of proof. On the evidence so far adduced, the respondent has not met the burden of proof and accordingly she will be given an opportunity at a further hearing to present additional evidence.
In addition, on the issue of the $5,000 deposited by respondent on September 8,1961, her testimony is equivocal and further evidence should be adduced as to this item also.
The other matters which have been injected into this proceeding represent claims which more properly should be determined in an accounting or other proceeding.