Lou A. Baker, Plaintiff, v. John F. Baker, Defendant.

Supreme Court, Cayuga County, February 14, 1946.

*William S. Elder, Jr.*, for plaintiff.

*Garson Rubenstein* for defendant.

NATHAN D. LAPHAM, Official Referee. This is an action instituted by the plaintiff to recover the sum of $774.40, being one half of two bank accounts standing in the names of the parties payable to either or the survivor, alleged to have been wrongfully converted by the defendant to his own use.

The parties to this action were united in marriage in 1885, the plaintiff at the time of the trial being seventy-nine and the defendant eighty-one years of age. Throughout their active years they were farmers, entering upon their marital venture with no assets save their youth and health. In the course of time the plaintiff received a legacy of $500, a portion of which she testified she used in and about the house in the purchase of furniture, carpets and various other items, and in payment of an obligation of the defendant amounting to $180. For about fifteen years they lived with Mr. Baker's father on his farm which, on the death of the old gentleman, passed to the defendant's sister who thereafter sold the same to Mr. Baker for $2,500. The balance of plaintiff's legacy, about $200, was applied on the purchase price. From moneys saved by the defendant and his wife's contribution, they were able to make a down payment of approximately $800, and Mr. Baker borrowed $1,700. From that time until their buildings were destroyed by fire the story of their existence was the normal one of mutual struggle and happiness, she bearing four children and in addition to her household and domestic duties, assisting him in the fields. After the children were reared and left the home, life became increasingly difficult with the passing of the years. In 1916 the barn on the premises burned and the insurance recovered was used to pay off the mortgage. About 1929 Mr. Baker lost one hand but, handicapped as they were, they continued to operate the farm as best they could and Mrs. Baker worked for several years during the canning and apple drying season, using her earnings for family expenses. In February, 1942, the house

and contents burned and they were compelled to seek shelter in the home of a daughter and her husband.

Fortunately this property was insured in the sum of $2,500 and, when it was received, they opened two joint accounts on May 14, 1942, one in the Auburn Savings Bank in the sum of $1,000, and the other in the William H. Seward & Company Bank in the same city in the sum of $1,500. Both these accounts were opened in the names of Mr. and Mrs. Baker payable to either or the survivor. Mrs. Baker tells us that it was agreed that they would treat the Seward deposit as a checking account, preserving the savings bank fund as a nest egg or security against the future. While the versions of these elderly people varied somewhat as to details, this was but natural considering the forgetfulness which marked their years. In the main, however, the picture is one of a marital partnership in these funds. I have no difficulty in gleaning from their respective testimony the understanding that each was to have a one-half interest in these deposits. Mrs. Baker testified to this, and the defendant admitted that he told his wife: " A. I can't tell you word for word, like that, but naturally if I put it that way it was hers as well as mine. * * * Q. Well, then, at the time that you put it in in that way did you still feel that that money was half your wife's? A. Why, yes, at the time I put it in that way."

Under the new living conditions the plaintiff drew upon the checking account for the payment of incidental expenses and $6, later $7, per week for their board and lodging. The defendant for years had manifested a roving disposition. Even before the home was burned, he would depart without warning and return at will, usually late at night without explanation of his reasons or whereabouts. This characteristic became even more pronounced after they entered the home of their daughter until he eventually took up his residence in the home of an acquaintance in Skaneateles. His explanation on the trial was a growing feeling that he was not wanted by his son-in-law in the home although, when questioned, he could point to nothing specific on which to base this belief, simply stating in substance that he felt he was not welcome. He further said that he thought his wife was drawing too extravagantly upon the checking account and yet he failed to give a single example and the record shows that most, if not all, of the withdrawals were for legitimate purposes, including his own hospital bill.

However, on June 28, 1944, he withdrew from the savings bank the entire amount with interest accumulations amounting to $1,040.60, and on the 20th day of July following, he withdrew

·the balance then in the checking account amounting to $568.20. He later informed his wife that he had withdrawn their entire savings account but she had no warning that he had depleted ·the checking account until a check issued by her ·in payment ·of a current bill was returned marked " no funds ". Efforts were thereafter made to re'concile this old couple and adjust their financial affairs but to no avail and the question before me is whether by these withdrawals the defendant appropriated and converted to his own use the one-half interest of the plain-.tiff in these accounts.

Both Mr. and Mrs. Baker are now old and feeble. She is unable to perform any work other than the lightest tasks. The .farm ·still .stands in his name, and now that he has taken all their ·cash, she is absolutely without funds for her support.

After a careful consideration of the record in this case, and in the light of the appearance of these elderly people on the .stand, I am convinced that, as a result of their mutual contri-butions to the property out of which these deposits arose, both in money ·and in labor, their common efforts through. the years, and their recognition at the time of the recovery of the insur-ance upon the house, and afterward, that they had an equal interest therein, there can be no question as to what both under-stood and intended.

It is well-settled law that " It is not the promise only, nor .the breach only, but unjust enrichment under cover of the rela-tion of confidence, which puts the court in motion." (*Sinclair* v. *Purdy*, 235 N. Y. 245, 253; *Foreman* v. *Foreman*, 251 N. Y. 237, 240.) The doctrine of the *Foreman* case (*supra*) has become the universally accepted law of this State on the subject of unjust enrichment and was applied quite recently in the follow-ing cases: *Hartkopf* v. *Hesse* (49 N. Y. S 2d 162) and *DeCortin* v. *Baker* (265 App. Div. 955). Even when the promise is expressed in words so vague and indefinite as to spell uncer-tainty, if the whole transaction was " instinct with an obliga-tion " (*Sinclair* v. *Purdy, supra,* p. 254), it is enforcible.

These deposits were true joint accounts in statutory form and Mr. Baker was entitled to receive but his moiety if he saw fit to withdraw the same. (*Matter of Hoffman*, 175. Misc. 607; *Matter of Suter*, 258 N. Y. 104, 106; *Matter of McKelway*, 221 N. Y. 15; *Moskowitz* v. *Marrow*, 251 N. Y. 380; *Marrow* v. *Mos-kowitz*, 255 N. Y. 219; *Matter of Porianda*, 256 N. Y. 423; *Walsh* v. *Keenan*, 293 N. Y. 573; *Matter of McCarthy*, 164 Misc. 719, 724, affd. 254 App. Div. 827.) Here, the intent of the parties is so clearly defined that, in my opinion, the one-half interest

of the plaintiff is unquestionable. While the presumption arising from a joint account in statutory form is a rebuttable one, the entire proofs satisfy me that it was the intent of these parties to create a true joint account which, upon the death of either, would carry the funds to the survivor but which, during the life of both entitled either Mr. or Mrs. Baker to withdraw only a moiety. Having exceeded his rights by withdrawing the whole instead of his moiety of these two accounts, the defendant subjected himself to an action by the plaintiff to recover her one half thereof.

The plaintiff is entitled to a judgment in the sum of $774.40.

Findings of fact and conclusions of law may be submitted in accordance with this decision.