# In the Matter of the Estate of George V. Reardon, Deceased.

Surrogate's Court, Bronx County, December 19, 1966.

*La Penna & Tuckman (Alexander A. Miuccio* of counsel), for Edward Reardon, administrator, petitioner. *Nolan & Meyer* for Frances Joffe, respondent.

Christopher C. McGrath, S. This is a discovery proceeding tried by the court without a jury wherein the administrator seeks to recover as an asset of the estate the sum of $8,380.15 in a joint account payable to " George V. Reardon and/or Frances M. Joffe ", the latter being the decedent's sister, who is allegedly withholding the proceeds. The respondent, Frances Joffe, claiming title to the funds, at this second trial offered no testimony whatsoever in support of her position and relied entirely on the presumption arising from the form of the account (Banking Law, § 675, subd. [b]).

The pertinent provisions of this statute read as follows: " (b) The making of such deposit or the issuance of such shares in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which the banking organization, foreign banking corporation, surviving depositor or shareholder is a party, of the intention of both depositors or shareholders to create a joint tenancy and to vest title to such deposit or shares, and additions and accruals thereon, in such survivor. *The burden of proof in refuting such prima facie evidence is upon the party or parties challenging the title of the survivor.*" (Italics added.)

In view of the foregoing, the court at the outset of the trial ruled that the petitioner had the burden of proving that the decedent did not intend to create a joint account. (*Matter of Reardon,* 25 A D 2d 370.)

The essential facts of this controversy are as follows:

The decedent, over 70 years of age and a bachelor, died intestate on December 23, 1963. He was survived by 2 brothers, 1 sister and 10 nephews and nieces, the latter being children of a predeceased brother.

On September 26, 1963, when quite ill and about to go into a hospital for treatment, decedent had a conversation with his sister-in-law, Mae Reardon. At that time, he turned over to her a small suitcase which contained the passbooks for several bank accounts, some miscellaneous papers and about $400 in cash.

The only bank account involved in this proceeding pertains to a savings account in the Chase Manhattan Bank which at that time was in the decedent's individual name.

On the same occasion, decedent told Mae Reardon that during his hospitalization he would like her to take care of his personal affairs, pay his rent, telephone, gas and hospital bills, together with any other matters requiring attention while he was at the hospital.

Shortly after this conversation, decedent entered St. Elizabeth's Hospital. Thereafter, Mae Reardon did what she had agreed to do for the decedent with reference to his personal and financial affairs, keeping a record of the expenditures and visiting him several times each week at the hospital.

Shortly before December 6, 1963, Mae Reardon's husband became ill so that it was necessary for her to take care of him. As a result she was no longer able to devote the time in looking after decedent's affairs and in visiting him at the hospital as frequently as she had done in the past. Because of this change in circumstances, the decedent told Mae Reardon that, since his own sister, Frances Joffe, the respondent herein, was now retired on pension, she would be in a position to do the things that Mae Reardon had previously performed for him prior to her husband's illness.

When Frances Joffe indicated that she was agreeable to this suggestion, the two sisters consulted Abraham A. Katz, an attorney known to the decedent and who was acquainted with the Reardon family. This attorney, upon being consulted by Mae Reardon and Frances Joffe, suggested that the decedent write to him from the hospital requesting that the attorney call to see him.

Upon receiving a letter from decedent, on December 6, 1963, the attorney went to St. Elizabeth's Hospital and saw and spoke with the decedent. At the trial herein the attorney testified in part as follows:

By the petitioner: " Q. Will you describe to the court the circumstances surrounding the visit to St. Elizabeth's Hospital? A. I saw George V. Reardon in his hospital room. He was sitting up in bed. I had a conversation with him.

" I told him I had received his letter; I had talked to Frances and to Mae; and I was ready to comply with his request, whatever that was.

" He told me that he wanted some legal document signed; that I was to prepare some legal document for him to sign with reference to his bank, or wherever he had his funds.

" He told me that his sister (later the witness corrected himself and said that he had meant sister-in-law and not sister), Mae Reardon, who had been handling his personal and financial matters up until that time, who had been paying his rent, his electricity bills, his medical expenses and his other bills, was unable to continue to visit with him regularly as she had in the past because of an illness, I believe, of Ed, her husband. He told me that he wasn't too happy with his present stay at the hospital.

" He told me that his sister Frances was now in a position to take over — to handle his personal affairs, his financial affairs, to pay his rent, to try to get him into a sanitarium, to pay his other bills and take care of his personal and financial matters. He told me that he had given his sister Mae originally, I believe, some $400 in cash and some other personal policies and some other personal effects, but that from now on Frances was going to take over and handle his personal and financial matters, and that he wanted to sign some legal document.

" I told him that I had prepared powers of attorney, which I had with me, and that I felt that with these powers of attorney Frances would be in a position to handle his personal matters, moneywise. And he then signed the powers of attorney in my presence."

Thereafter, on December 9, 1963, Mae Reardon and Frances Joffe met at a branch of the Chase Manhattan Bank where the account in question was kept. At that time Mae Reardon turned over to Frances Joffe the property which had previously been entrusted to Mae Reardon by the decedent. At the previous trial the respondent, Frances Joffe, testified that on that occasion when she and Mae Reardon were at the Chase Manhattan Bank, the power of attorney prepared by the lawyer heretofore referred to was offered to the bank manager with relation to the account in his bank but he refused to honor it. The refusal was based on the ground that it was the policy of the bank not to accept a power of attorney pertaining to a savings account.

When the bank officer was advised that the reason for the power of attorney was to enable the respondent "to take charge of everything", the bank officer suggested that a joint account in the name of the original depositor and the respondent would accomplish that purpose. Thereupon, the requisite forms for such an account were given to the respondent.

However, the necessary signature cards to open a joint account in the Chase Manhattan Bank were never signed by the decedent. Instead, the decedent signed a series of withdrawal slips in blank for his account in that bank and when Frances Joffe again visited this bank on December 11, 1963, she withdrew the balance then on deposit and closed out the account. She was able to do this when the bank completed the blank withdrawal slip signed by the decedent by inserting the amount of $8,380.15 and issuing its check payable to the decedent in that amount. The respondent then delivered the check to her brother who had by then been transferred to the Veterans' Hospital, and at her request the decedent indorsed the said check.

Thereafter, the respondent took this check payable to decedent and opened a joint account payable to "George V. Reardon and/or Frances M. Joffe" in the Chemical Bank New York Trust Company at its Bronx branch located at East Kingsbridge Road. It was testified that this branch of the bank was convenient to the respondent's home and not far from the Veterans' Hospital. The account was opened when the respondent signed the necessary signature cards and the bank ledger card and deposited the check of $8,380.15. At a later date, the decedent at respondent's request signed a specimen of his signature which was attached to the bank records with reference to this alleged joint account.

When the decedent died on December 23, 1963, he was still confined at the Veterans' Hospital and there had been no deposits or withdrawals from the account in question from the opening of the account until the time he died.

From a review of all the credible evidence in this case, the court concludes that the joint account in the Chemical Bank New York Trust Company in the name of decedent and/or Frances M. Joffe was created as a matter of convenience with no intention of conferring a beneficial interest upon the respondent and solely for the purpose of making the funds available for the payment of decedent's obligations during his hospitalization and illness.

In view of the foregoing, the court holds that the proof submitted by the petitioner overcomes the prima facie evidence of

intent to create a joint tenancy arising from the form of the account (Banking Law, § 675, subd [b]).

Accordingly, the respondent will be directed to turn over the funds in question to the petitioner.