S. Samuel Di Falco, S.
The first objection to the account of administrator is overruled. The account reports the sale of securities at the prices stated and there is no evidence that any sums were received other than those reported in Schedule B. Letters of administration were issued on July 19, 1965. The securities are alleged to have been sold through a firm of stock brokers on August 2, 1965. Thus a period of only two weeks elapsed between the date of qualification of the fiduciary and the date of the sale of the securities. This lapse of time cannot be said to represent an unreasonable delay in disposing of securities. The administrator was justified in disposing of such securities as he determined, in his business judgment, should be sold. There is no merit in the contention that he should have held them for a higher market.
The second objection, as amended, is addressed to the act of the husband of the decedent (who is the accounting administrator) in withdrawing during the decedent’s lifetime the entire sum on deposit in one joint savings bank account and almost all the money on deposit in another joint savings bank account. Both accounts were in the names of the decedent and her husband, payable to either or the survivor. Although the husband deposited most of the funds in the joint accounts he does not dispute the fact that both accounts were intended by both parties to be true joint accounts. The decedent died on April 28, 1965. The withdrawals were made on January 26 and 27,1965, and the funds withdrawn were placed in an account in the sole name of the *461 husband. Some of the funds were expended for the medical, nursing and hospital care of the decedent. The amounts so spent are not given in detail, but the husband estimated that he had spent approximately $4,000 for doctors, nurses, and medicines for his wife. He withdrew $6,341.86 from one savings bank account, on January 27. It was stated by the objectant, and conceded by the administrator, that he had withdrawn all but approximately $1,500 from the other joint account. The only evidence respecting transactions in the latter account is in the bankbook itself, which shows withdrawals aggregating $16,072.50 on January 26 and 27, leaving a balance of $609.14. The book shows several deposits thereafter (some even subsequent to the decedent’s death), but there is no proof of the person making them. The final balance was $1,510.59. It is evidently that figure that caused the statement and the concession. In any event, we have evidence of withdrawals slightly in excess of $22,000, and the objectant demands that half of this sum be repaid to the estate.
Perhaps in no other area of the law governing distribution of a decedent’s property has so much confusion arisen as in respect of the rules to apply to a joint bank account when one depositor has withdrawn funds without the consent of the other. (See Third Report of Temporary State Comm, on Law of Estates [1964], p. 372; also Matter of Suter, 258 N. Y. 104,106.) Some of the difficulty may be traced to the statutory conclusive presumption in the case of joint savings accounts (which was repealed by L. 1964, eh. 157) and the unwillingness of the courts to apply that presumption to funds that had been withdrawn from the account during the lifetime of both depositors. Thus the court sometimes ruled that no true joint account had been created because the owner of the deposit did not intend to create a joint tenancy, that all of the funds withdrawn consequently belonged solely to the original depositor, but that whatever remained in the account belonged to the surviving joint tenant by virtue of the conclusive presumption of an intent to create a joint account. (See Matter of Juedel, 280 N. Y. 37.) Perhaps that seeming contradiction makes it not unreasonable to say, as has frequently been said, that the joint tenancy may be “ terminated ” or “ destroyed ” by one depositor withdrawing his moiety (Matter of Suter, supra, pp. 104, 106), but if a balance is still on deposit in the joint names at the death of the other depositor, the one who withdrew his share is nonetheless entitled to that balance as surviving joint tenant. Thus one may withdraw his full share, yet keep his right of survivorship in his co-owner’s share.
*462 Perhaps some of the difficulty also flows from the attempt to apply to such joint owners the same principles of law that govern joint tenants of realty. Differences in the form of the property create practical problems in relation to the one that could not conceivably arise in the other. Undoubtedly, too, some confusion arises from accepting as applicable to all cases general statements that were intended to apply only to a particular form of remedy. When both depositors are living and one has taken more than his moiety, the other depositor has an election of remedies, at least in a legal sense, if not a practical sense. (Fowler v. Bowery Sav. Bank, 113 N. Y. 450, 454; King v. King, 13 A D 2d 437. ) He may elect to ratify the withdrawal and to treat the other depositor as holding the funds subject to the right of the plaintiff to his one-half share. (Fowler v. Bowery Sav. Bank, supra, p. 454.) His right to demand one half of the withdrawals from the other has been well established. (Rapisardi v. Rapisardi, 28 Misc 2d 152, 153, affd. 278 App. Div. 863; Michaels v. Michaels, 69 N. Y. S. 2d 668; Baker v. Baker, 187 Misc. 309; Ushinsky v. Landis, 23 Misc 2d 87.) Hence it is often stated as an established rule that one who withdraws more than his moiety is liable to the other for the excess over his one-half share. (Third Report of the Temporary State Commission on the Law of Estates, supra, p. 368; Matter of Bricker [Krimer] v. Krimer, 13 N Y 2d 22, 27; Matter of Leisner, 25 A D 2d 844, 845.) Yet it is just as firmly established that the surviving depositor may recover from the estate of the deceased depositor the entire amount withdrawn from the joint account if he elects to hold the withdrawal as unauthorized. (Marrow v, Moskowitz, 255 N. Y. 219; Matter of Hirsl, 48 Misc 2d 723 and cases cited.) The basis of the latter rulings is well expressed by Mr. Justice Di G-iovauua: “ once a joint tenancy has been created, the interest of either joint tenant is in the entire bank account and not in a part thereof. If one withdraws the entire account, the interest of the other is not. thereby destroyed but equity may very well say that one who has withdrawn the money has become the banker thereof.” (Rapisardi v. Rapisardi, supra, p. 153.) That a withdrawal of virtually all of the funds does not destroy the joint tenancy is well settled by the authorities. (Marrow v. Moskowitz, 255 N. Y. 219, 222, supra; Matter of, Porianda, 256 N. Y. 423, 426; Matter of Suter, 258 N. Y. 104, 106, supra; Ohanian v. Ohanian, 25 A D 2d 465.)
Although we may speak of a depositor having an election of remedies, the choice is somewhat limited in a practical sense. When both depositors are alive and a true joint account had been created, the demand against the one making the excessive with *463 drawal can only be for an equal share of the entire deposit because the attempted destruction of the right of survivorship cannot at that time be translated into money damages. When one of the parties has died, the right of survivorship does have a fixed value for the survivor and has no value at all for the deceased depositor and this fact must, in a practical sense, shape the demand of the one or the representative of the other. Thus we find that when the litigation is between two living depositors the demand is usually for one’s moiety, but when a deceased depositor is the one who had withdrawn the entire sum, the survivor may demand the entire sum and there is substantial authority to support such demand. When, however, the depositor who withdrew the entire fund is the one who survives, there appears to be a lack of unanimity among the decisions.
In Matter of Enis (48 Misc 2d 548) the surviving depositor was found to have withdrawn substantially more than his one-half share, and he was ordered to pay to the estate of the deceased depositor the excess over his one-half share. Yet it was also held that he was entitled to the balance remaining on deposit by virtue of the survivorship provision in the deposit agreement. He thus had one half of the entire' deposit plus whatever remained in the account. It would seem that if his withdrawal is ratified and confirmed up to one half of the account, that act “ destroys ” or “ terminates ” (Matter of Suter, supra) the joint tenancy and right of survivorship.
A similar result was reached in Matter of Leisner (N. Y. L. J., July 10,1964, p. 8, col. 4, mod. 25 A D 2d 844, affd. 19 N Y 2d 869) where the Surrogate ruled that the respondent was liable to the estate in the amount that his withdrawal exceeded his moiety, but that he was entitled to all sums on deposit at the decedent’s death. However, the Appellate Division viewed the evidence as requiring the finding that the withdrawals by the respondent were in accordance with the decedent’s wishes and his intent and were without any liability on the part of the respondent to account for their use. The Appellate Division remarked that the Surrogate’s conclusion “ that respondent was liable to the estate for moneys withdrawn in excess of one half of the accounts * # * is in accord with the view expressed in many cases”. It further said: u Of course as survivor respondent was clearly entitled to the balance remaining in the account ” (p. 845).
A different result was reached in Matter of Murphy (23 A D 2d 866). In that ease the decedent opened a joint bank account with his daughter. During his lifetime she withdrew the entire amount on deposit and redeposited it in a new account in her *464 name. The court divided on the question whether, under the facts in that record, a true joint account was intended to be created or no such joint tenancy was actually intended. However, the court was unanimous on the point that the withdrawal did not destroy the joint tenancy or the title of the survivor, if such a form of account was intended. The majority held that a true joint account was created and the court dismissed the petition, thus holding that the respondent was entitled to the entire amount withdrawn.
In Matter of Juedel (280 N. Y. 37, supra) where one depositor had withdrawn $5,000 from a joint account which had a total sum of $5,278.52 on deposit, the court concluded that there was sufficient evidence in the record that no true joint account was ever created, and it therefore directed the surviving depositor to pay to the estate of the other depositor the entire amount withdrawn. Yet in discussing the rights of the parties the court said: “ The $5,000 fund drawn out by Doris Harmon [the surviving depositor] was thus in the first place to be taken to be her own, in virtue of her presupposed status as surviving joint tenant ”, with the right of the executor of the deceased depositor to come forward with proof sufficient to overcome ‘1 this statutory initial imputation of title against him ” (p. 40). Again, the court said that in respect of the sum withdrawn, the presumption of joint ownership was only a rebuttable presumption “ that is to say, an implication which imputed to the form of the deposit no more than the prima facie consequence of title in Doris Harmon as survivor ” (p. 42). Thus the court treated the funds in the hands of the survivor as held in joint tenancy despite the change of form of the account, if in fact a true joint tenancy was originally created.
In Matter of Porianda (256 N. Y. 423) where the fact pattern was very similar to that in the Juedel case, a new trial was granted because of the refusal of the court to receive competent evidence on the issue of intent. However, the court did say (p. 426): “ The withdrawal of moneys from the joint account does not destroy the joint tenancy, if one was created; it merely opens the door to competent evidence, if available, that no joint tenancy was originally intended or created.” Again the court viewed the joint tenancy as continuing despite the withdrawal of virtually the entire deposit, assuming, of course, that a true joint tenancy was created.
In the last two cases cited (Matter of Juedel and Matter of Porianda) the quoted statements are, of course, only dictum. In the one case the decision was that no true joint account had ever been created and in the other a new trial was directed on *465 the issue of intent to create such an account. Matter of Leisner will not be decisive here because the decision in that case in the appellate courts was predicated, in part at least, upon a finding of intent on the part of the decedent that all such withdrawals could be made by the other without liability to account for their use. In the pending case no effort was made to explore that subject in any degree. What may be significant in the Leisner opinion (25 A D 2d 844, 845) is that in support of the statement that the surviving depositor should not ‘ ‘ be held liable, on the evidence in this record, to repay the excess ”, the court cited Matter of Murphy (supra), a case in which the court held that the withdrawal of the entire deposit did not destroy the joint tenancy or the title of the survivor.
It thus seems to be well settled that either joint depositor may destroy the joint tenancy by withdrawing his oné-half share, but that neither depositor has the right, without the consent of the other, to destroy the joint tenancy by withdrawing the entire fund or substantially all of it. It would seem to be well established also that if one joint depositor acts wrongfully by withdrawing substantially more than his share, the other depositor may ratify the termination of the cotenancy and hold his cotenant liable for the amount withdrawn in excess of his one-half share. Patently, the election of the innocent cotenant will determine the result, if the right to elect still survives. The question in the pending case, then, is whether the estate of the deceased depositor may elect to ratify the destruction of the joint tenancy and demand return of the excess over the other’s one-half share. In the case now before the court the administrator and the joint tenant are one and the same person, and it is thus unlikely that he would volunteer to act against his own interest. However, he is subject to fiduciary obligations and duties, and he could not be permitted to act for his personal benefit and contrary to the interests of the estate which he represents. The objection herein of the respondent is sufficient to raise the issue on behalf of the estate and to bring into operation the rules which compel a fiduciary to give undivided loyalty to his trust.
Certain factors may be present or absent in one case or another and their presence or absence may dictate the result. The amount of the excess withdrawal,, the apparent intent of the one making the withdrawal to take only his share or to attempt to take the entire fund, the presence or absence of a fraudulent intent, the length of time that has elapsed since the making of the withdrawal, the knowledge or lack of knowledge on the part of the other depositor are factors that may affect decision. The present record is devoid of any evidence except as to the exist *466 ence of the accounts, the amounts of the withdrawals and the illness of the decedent, with the consequent expenses. It is not disputed that both parties contributed to the joint account, the husband claiming that two thirds of the deposits were his funds. The decedent was ill for five months prior to her death on April 28, 1965. It was during the period of her illness that the withdrawals were made.
There can be no doubt that if the decedent had survived her husband, his personal representative could have been compelled to pay over the entire amounts withdrawn by him, subject, of course, to any deductions that are lawfully or equitably chargeable to the wife. There is no evidence as to whether the husband and wife had discussed the joint deposits or whether he had advised her of his action. Nothing in the record would indicate the reason for making the withdrawal under these circumstances. It seems to the court that under the circumstances of this case, the estate of the deceased depositor no longer has the right to elect to ratify the termination of the tenancy and to hold the cotenant liable for the amounts withdrawn in excess of his one-half share. Under the circumstances, it seems to the court that the withdrawal by the husband did not terminate the joint tenancy in this case or affect the right of survivor. The death of the other depositor has now fixed the respective rights and interests in the deposits. The funds are to be deemed held in the joint account in accordance with the original agreement and intent of the parties and as survivor, the husband is entitled to the sums in the accounts.