Samuel J. Silverman, S.
On the trial of the issues arising on objections to the account of Warren L. Kessler as one of the executors of the estate of Pearl L. Kessler, a motion to dismiss was made at the close of objectants’ case.
One of the objections to which the motion was addressed relates to withdrawals on October 31 and November 16, 1961 by Warren Kessler from a joint account in the Greenwich Savings Bank in the names of Pearl L. Kessler and Warren L. Kessler “joint account payable to either or survivor” of the sums of $10,800 and $4,550.09 and the deposit by him of those sums in an account in the same bank entitled “ Warren L. Kessler in trust for Pearl L. Kessler.”
The objection is made that by these withdrawals Warren L. Kessler withdrew from the account more than his moiety of the *18 account without Pearl Kessler’s consent and that he is therefore liable to the estate of Pearl Kessler for such excess.
As a preliminary matter. it may be noted that the sum of all the deposits in the joint account from its inception was $27,350; that half of that is $13,675; and that to the extent that the questioned withdrawals exceed that sum they are clearly in excess of one half of the account. By how much, if at all more, the withdrawal exceeds half the account is not clear. The determination of that question would presumably require further information as to other withdrawals made from the account.
The question remains, however, whether Warren L. Kessler (or his estate) is liable to the estate of Pearl Kessler for any such excess.
I hold that Warren L. Kessler and his estate are not so liable and I grant the motion to dismiss this objection to the account.
The general rule as to deposits in this form has been thus stated by the Court of Appeals: ‘ ‘ When a bank account is opened in the form proscribed by statute (Banking Law, § 249, subd. 3), a presumption at once arises that the interest of the depositors is that of joint tenants. Upon the death of one of the depositors, this presumption becomes conclusive in favor of the survivor in respect of any moneys then left in the account.* It continues to be a mere presumption in respect of any moneys previously withdrawn.” (Marrow v. Moskowitz, 255 N. Y. 219, 221 [1931].)
Again the Court of Appeals has recently said: “As to any moneys withdrawn from such an account during the joint lives of the two named persons, there is still, after the death of either of them, the presumption that the moneys so withdrawn by one had in fact belonged to both * * *. In other words, the withdrawal of moneys from the joint account does not destroy the joint tenancy, if one was created. It merely opens the door to competent evidence, if available, that no joint tenancy was intended to be created [citing case]. When a joint tenancy is created, each joint tenant has the right as a joint owner of the bank account to withdraw a moiety (half) or less than a moiety for his own use and thus destroy the joint tenancy as to such withdrawals [citing case]. A joint tenant who withdraws a sum in excess of his moiety is liable to the other joint *19 tenant for the excess so withdrawn ”. (Matter of Bricker [Krimer] v. Krimer, 13 N Y 2d 22, 27 [1963].)
My reasons for holding that in the case at bar Warren Kessler, the survivor (and his estate), are not liable to the estate of Pearl Kessler, who predeceased him, with respect to these withdrawals, even if we assume that they exceed his moiety, are as follows:
1. A fundamental fact in this case which distinguishes it from such cases as Matter of Suter (258 N. Y. 104 [1932]) and Matter of Bricker [Krimer] v. Krimer (13 N Y 2d 22 [1963]) is that here Warren Kessler, the person who made the claimed excessive withdrawals, survived Pearl Kessler, on behalf of whose estate this claim is made, i. e., the estate of the joint tenant who died first here seeks to hold the survivor liable for withdrawals made by the survivor during the joint lifetimes.
2. In Marrow v. Moskowitz (255 N. Y. 219, 221-222 [1931]) Chief Judge Cardozo, speaking for the Court of Appeals, considering a claim by a surviving joint tenant against the estate of a predeceasing joint tentant with respect to moneys withdrawn by the decedent during her lifetime from a joint savings bank account, said: “ The withdrawal did not destroy the joint tenancy or the title of the survivor, if a joint tenancy had been created.”
Applying that statement to the case at bar, the withdrawal by Warren Kessler did not destroy the title of the survivor who is here Warren Kessler. Therefore, the withdrawn funds even in excess of one half belonged to him (in the absence of some evidence that it was not a true joint tenancy, and there is no such evidence).
In a recent case the Appellate Division [2d Dept.] held that the survivor who withdrew money from a joint account before the death of the other joint tenant is not liable to the estate of the deceased joint tenant for such withdrawal. (Matter of Murphy, 23 A D 2d 866 [2d Dept., 1965], cited with approval in Matter of Leisner, 25 A D 2d 844 [1st Dept., 1966]. Accord, Matter of Kramer, 54 Misc 2d 459 [Surr. Ct., N. Y. County, Di Falco, S., 1967].)
3. Pearl Kessler predeceased Warren Kessler. The joint account as originally opened clearly contemplated that on the death of one of them the survivor (here Warren Kessler) should have the money in the account. The account into which Warren Kessler placed the withdrawn- funds “ Warren L. Kessler in trust for Pearl L. Kessler ” contemplated exactly the *20 same tiling — that the survivor would have the money. Thus, at all times, both parties contemplated that the money would go to the survivor. The basic rules in this area are presumptions as to the intent of the parties. To hold that because of the form of these transactions, the survivor Warren Kessler is not entitled to the money would be to dispose of the money contrary to the way that both the parties in interest always contemplated that it would go and would be a perversion of the intent of the parties.
4. It has been suggested that the fact that the entire account has been withdrawn may be material. (Matter of Suter, 258 N. Y. 104, 106 [1932].) It is not clear to me which party the court in the Suter case thought this fact helps. In any event, in both Matter of Murphy (23 A D 2d 866 [2d Dept., 1965]) and Marrow v. Moskowitz (255 N. Y. 219 [1931]), the survivor was held entitled to the money even though the entire amount had been withdrawn during the joint lifetimes, in the one case by the survivor, in the other by the decedent.
In considering a related problem (where the survivor sought to recover the funds) Judge Di Falco said in Matter of Hirsl (48 Misc 2d 723, 729 [Surr. Ct., N. Y. County]): “ The decisive factor, in the opinion of the court, is whether the deposit was still in existence as a deposit at the time of the death of the first depositor to die, and whether the one had sought to change the form of the entire deposit rather than merely to withdraw his own share.”
The present situation appears to fit more nearly within the description of a change in the form of the entire deposit rather than an effort by Warren Kessler merely to withdraw his own share.
In the new account — “ Warren L. Kessler in trust for Pearl Kessler ” — as in the old account, the survivor of Pearl Kessler and Warren Kessler would be entitled to the balance in the account. The funds remained intact. The $10,800 withdrawal here attacked was part of the opening deposit in the new account in the same bank. The $4,550.09 item was a transfer of the remaining balance in the old account to the new account. The two transactions here questioned were the last transactions in the old account; but thereafter there were transactions — deposits — in the new account only. There were no withdrawals from the new account until after Pearl Kessler’s death, a year after the transactions here involved.
5. Even in the cases in which the party who withdraws a fund has been held liable for the excess over his half, it has been stated that that liability is subject to the provision that *21 such withdrawal was made without her (the other joint tenant’s) consent or acquiescence. (Matter of Libow, 46 Misc 2d 919, 924 [Surr. Ct., Nassau County, 1965].) Here, there is of course, no evidence that the withdrawals were without Pearl Kessler’s consent. Neither is there any evidence that the withdrawals were with her consent.
In Moskowitz v. Marrow (251 N. Y. 380, 397-398 [1929]) Chief Judge Cardozo said:
“ The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor.
“ A reading of the statute that would make the presumption irrebuttable except within these limits would do violence to intention and foster litigation. It would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula [case cited]. It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality. An irrebuttable presumption would close the door to testimony, direct or circumstantial, that in opening the deposit the incidents of a joint tenancy had been varied by agreement. Many a family settlement, made in the informal fashion to be expected among relatives, would be opened up for scrutiny after years of acquiescence.”
While Judge Cabdozo was addressing himself to the rebuttable nature of the presumption of joint tenancy, the considerations mentioned by him would seem to have considerable relevance to the issue of whether moneys that were withdrawn during the lifetime of the parties were withdrawn with the consent of the parties, and the question of who has the burden of coming forward with some showing that the withdrawal was with or without consent.
In the case at bar, the parties were husband and wife. At the time of these withdrawals, Pearl Kessler had had an operation for brain tumor and huge medical expenses had been incurred. There is evidence that she had withdrawn at least one large sum from this savings account. There is every indication as Chief Judge Cabdozo said in the above quotation from Moskowitz v. Marrow, that these parties had no “ thought of restricting their enjoyment of the fund, and their right to draw and spend, by the shackles of a formula ”. We do not *22 know what the family arrangements were between this husband and wife, both of whom are now dead. For example, the larger item here questioned is a withdrawal of $10,800 on October 31, 1961. It appears from the transcript of the joint account that there was a deposit of $10,800 on March 19, 1958. It seems unlikely that this identity of figures is a mere coincidence. We do not know what, if any, family arrangement there was between Warren Kessler and Pearl Kessler as to this $10,800.
I have previously indicated (see “4” above) the evidence to indicate that the new account was largely a continuation of and successor to the old, with the same right of survivorship, and with deposits thereafter made only in the new account.
Given a ease in which a husband and wife, joint tenants of a bank account, are both dead, I am not prepared to say that each party is accountable to the other for all withdrawals made (in excess of one half) and that each must show that the other consented to the withdrawal. This would indeed be to upset informal family settlements and force an accounting from one party to the other by rigid rules in precisely the way that Chief Judge Cardozo in Moskowitz v. Marrow (supra) said the law did not contemplate.
In these circumstnces, I hold that the party who attacks the withdrawal must at least show that it was without the consent of the other joint tenant. There has been no such showing.
The motion to dismiss this item of objections is granted.

 Since the amendment of 1964 this presumption is no longer conclusive (Banking Law, § 675). The change is not material here as the moneys were not left in the account.