Nathan R Sobel, S.
The trial of this discovery proceeding requires a determination of the rights of a surviving depositor of a joint savings account to the deposit. This surviving depositor had withdrawn the entire deposit one day before the death of her joint depositor. What are the respective rights of the estate of the deceased depositor and the surviving depositor? Many high court decisions discuss the problem. While the results reached hre in each instance just and fair, these decisions provide very little in the way of a single rationale adequate to explain the results. This leaves the trial courts without any real guidance.
Some history is necessary to put the issue in proper perspective.
A statute governs such joint and survivorship accounts (Banking Law, § 675, formerly § 239, subd. 3). From the statute’s inception in 1909, whether so purposed or not, it has authorized á reasonably reliable method of making a nontestamentary transfer of bank deposits at death (Robb v. Washington & Jefferson Coll., 185 N. Y. 485; cf. Matter of Hillowitz, 22 N Y 2d 107). But it did more: it decided that upon the opening of such an account in proper form the deposit “ shall become the property of such persons as joint tenants ”. The term ‘ ‘ joint tenants ’ ’ creates a special status carrying with it legal implications not particularly suited for any intangible personal property ownership but especially not for bank deposits. (See Hines, Personal Property Joint Tenancies, 54 Minn. L. Rev. 509 [1970].) A joint tenant of real property receives upon creation an undivided half, undivided in the sense that for purposes of tenure and user he may occupy the whole. But *825 his undivided half is not readily alienable and he can under no circumstances convey the whole without his joint tenant joining in the deed. A joint tenant of a bank deposit also receives an undivided half. But one does not occupy a bank account. On the other hand either joint tenant of a bank deposit may withdraw, i.e. alienate his half or the whole by simply obtaining the possession of the bankbook. Only with respect to survivorship are both kinds of joint tenancies the same.
Another point. Joint tenants of real property usually intend joint tenure and user and survivorship. The average donor depositor usually intends survivorship but not always or even usually does he intend to transfer present ownership to any extent to his donee-depositor. Yet present ownership is a principal incident of a joint tenancy.
Only a few States (e.g. Michigan, California, Colorado, Missouri, Washington) have adopted the statutory joint tenancy concept for joint bank deposits. None of these however seems to have had the problems which recur with such frequency in New York. The majority of the-States have adopted a statutory “ contract ” status for joint bank deposits. The deposit agreement provides for withdrawals by one only, by both together or by either joint tenant. The deposit agreement would make provision only for survivorship. In short, the contract between the depositors evidences the relationship. ¡Such States have few problems.
Nevertheless, a statutory joint deposit in New York results in a “ joint tenancy ”, for it must be concluded that the Legislature used that term in the statute understandingly (Moskowitz v. Marrow, 251 N. Y. 380, 389-390). It has caused difficulties for the courts not evident in other States which have adopted other legal concepts.
Because of such problems the joint deposit statute has been amended several times.
It was held early in the statute’s history, that the creation of a joint deposit in statutory form is presumed, in the absence of proof of contrary intent, to create a true joint tenancy (Clary v. Fitzgerald, 155 App. Div. 659, affid. 213 N. Y. 696). This presumption carried with it both incidents of a joint tenancy— (1) a present transfer of an undivided half and (2) a present transfer of a right to the whole to the ultimate survivor. Since the latter but not the former was usually intended, the courts in many cases understandably found that no true joint tenancy was intended. The presumption was not available to the parties. In order to establish a right of survivorship independent of the presumption of a joint tenancy, *826 the agreement to such effect between the depositors had to be established. The “dead man’s statute” stood in the way of such independent proof.
The Legislature sought to solve the problem by creating two presumptions (L. 1914, eh. 369; see Moskowitz v. Marrow, 251 N. Y. 380, 396, supra). The first, a rebuttable presumption, left it open to the parties to disprove that the donor intended to confer a present interest in one half of the deposit on the donee-depositor. The second, a conclusive presumption confined to joint deposits in savings banks, closed the door after the death of one of the depositors to any evidence that the donor intended not to confer survivorship. Survivorship was conclusively presumed to be the agreement between the codepositors. Thus, after the death of one of the codepositors, the contest was limited solely to withdrawals made while both were still alive (Moskowitz v. Marrow, supra; Matter of Juedel, 280 N. Y. 37).
There was nothing illogical about the legislative decision. It conformed in all respects with the intention of most donor-creators of joint bank accounts. However, there were problems with respect to ‘ ‘ convenience accounts ’ ’ where neither present ownership nor survivorship was intended. These reached the courts with some frequency and ultimately resulted in the present statute (Banking Law § 675; see Third Report Comm, on Estates, 1964; N. Y. Legis. Doc., 1964, No. 19, p. 366 et seq.). The new statute became effective in 1964 but is retroactive to bank deposits created prior to that time (Matter of Reardon, 25 A D 2d 870).
Under the new statute, the making of a joint deposit, in the absence of proof of contrary intent, is presumptive evidence of an intention to create a true joint tenancy and thus to effect a present transfer of both an alienable interest in one half of the deposit in both depositors and a right to the whole fund in the survivor after the death of one of them. In actions or proceedings in which one of the parties is a survivor, the new statute specifically places the burden of proof in rebutting such presumption on the party challenging the title of the survivor.
Today it is open to the parties to rebut the presumption by establishing that no true joint tenancy was intended. It may be established that the donor-depositor intended neither a transfer of a present right of withdrawal nor a right of survivor-ship; or that one but not the other was intended (Matter of Reardon, 25 A D 2d 370, supra; Matter of Reardon, 52 Misc 2d 371, affd. 29 A D 2d 630, affd. 22 N Y 2d 928).
*827 Because of its significance in later discussion, it should be observed that the advantage in such contests is with the donor-depositor. A withdrawal by him of the whole fund or more than his moiety is evidence that no true joint tenancy was intended. Although self-serving conduct, it manifests a contrary agreement (Walsh v. Keenan, 293 N. Y. 573, 579; Marrow v. Moskowitz, 255 N. Y. 219, 221). If such donor-withdrawer happens also to be the decedent in a contest with a survivor, the fact of withdrawal may be the only competent evidence (CPLB 4519) in the case. Standing alone it is insufficient to overcome the presumption (Russo v. Russo, 17 A D 2d 129).
However, once the evidence adduced or the prima facie presumption establishes that the bank account is a true joint tenancy, i.e. one uncomplicated by contrary agreement or intention, then the law governing a joint tenancy with all that the term entails becomes applicable.
For one thing there is no longer any vestige of a donordonee relationship, the law no longer being concerned with who created the account (O’Connor v. Dunnigan, 158 App. Div. 334, affd. 213 N. Y. 676; Walsh v. Walsh, 29 A D 2d 991). For, upon creation, there is a present gift from the original donor to the joint depositor of a moiety or one half of the account which each may alienate unilaterally while both are alive (Matter of McKelway, 221 N. Y. 15, 19; Matter of Bricker [Krimer] v. Krimer, 13 N Y 2d 22, 27).
For a second thing there is a present transfer of a right to the whole fund to the survivor of the joint tenants. But this right is inchoate in both tenants until the contingency of the death of the other occurs. It would seem that unlike the rule applicable to real property, neither depositor by alienating his own moiety destroys the contingent survivorship right. No tenancy in common as is the case with real property occurs. This is by virtue of the deposit agreement.
Per my et per tout is the way our cases describe it — “by the half and the whole ” (Matter of McKelway, 221 N. Y. 15,19, supra; Moskowitz v. Marrow, 251 N. Y. 380 supra; Matter of Suter, 258 N. Y. 104; Matter of Bricker [Krimer] v. Krimer, 13 N Y 2d 22, supra). A joint tenant has a present alienable interest in one half of the fund; he has a present inalienable and inchoate interest contingent on his survivorship in the whole (Matter of Tilley, 166 App. Div. 240, 242-243, affd. 215 N. Y. 702).
A joint tenant may unilaterally “ sever ” the joint tenancy to the extent of withdrawing his moiety or less than a moiety. *828 When he does so he does not “ terminate ” the joint tenancy in the sense that he does not affect the right of survivorship. The survivor, whether .the withdrawer or the other joint tenant will be entitled to the remainder upon the death of either joint tenant.
But a joint tenant may not unilaterally withdraw more than his moiety or, as usually happens, the whole fund. Such a withdrawal has no effect whatsoever. It is the same as if a joint tenant of real property unilaterally executed a deed to the whole property. The cases speak in terms of such withdrawals not “ destroying ” the joint tenancy. What is meant is that the whole fund withdrawn not just the excess over the moiety keeps its character as a joint tenancy no matter into what form it is converted. The ultimate survivor whether he be the withdrawer or the other joint tenant will be entitled to the whole fund withdrawn not just the excess over the moiety. In a sense therefore a joint tenant who withdraws more than his moiety “ forfeits ” his right to his own moiety and a few of the cases so hold. Technically, this is inaccurate because in law there is no “ forfeiture ” — the whole transaction is simply treated as a nullity.
This is the legal nature of the joint tenancy. In the main the cases follow the joint tenancy concept.
Before discussing the cases, two things should be noted.
First, the cases concerning depositor-bank relationships are not pertinent. The provision in the statute authorizing the bank to pay “ to either during the lifetime of both ” is for the protection of the bank and irrelevant to the rights of the depositors between themselves. Such a right to withdraw the whole fund is patently inconsistent with the incidents of a joint tenancy. Protection of the bank was a prime motivation for the legislation but the joint tenancy concept was probably the Legislature’s with tax considerations in mind (Matter of Tilley, 116 App. Div. 240, affd. 215 N. Y. 702, supra).
Second, a true joint tenancy like any other status created by agreement may be altered, terminated or destroyed by agreement of both joint tenants. It is open to the parties to prove that there was prior consent or subsequent ratification of the acts of one by the other to withdrawals during the lifetime of both. Many cases concern such subsequent agreements; these are not pertinent to the discussion (cf Matter of Leisner, 25 A D 2d 844, affd. 19 N Y 2d 869).
The cases are quite clear and in accord with a true joint tenancy concept in at least two respects:
1. In a true joint tenancy, uncomplicated by any issue of lifetime withdrawals, the whole fund will vest in the surviving joint *829 tenant (Farelly v. Emigrant Ind. Sav. Bank, 92 App. Div. 529, affd. 179 N. Y. 594; Moore v. Fingar, 131 App. Div. 399; Clary v. Fitzgerald, 155 App. Div. 659, affd. 213 N. Y. 696, supra; Moskowitz v. Marrow, 251 N. Y. 380, supra; Mitchiner v. Bowery Sav. Bank, 31 A D 2d 803).
2. During the lifetime of both, each joint tenant has the right unilaterally to withdraw up to hi§ moiety but not in excess of his moiety.
When one withdraws less than his moiety, the other should ordinarily withdraw his share. If he fails to do so he gambles that he and not the withdrawing joint tenant will be the survivor. As discussed heretofore, the survivor, whether the withdrawer or not is entitled to the remainder on deposit. The unilateral withdrawal of one joint tenant of less than his moiety severs the joint tenancy as to the portion withdrawn but it does not terminate the as yet inchoate right of survivorship (Matter of Suter, 138 Misc. 85, affd. 232 App. Div. 45, affd. 258 N. Y. 104, supra; Matter of Bricker [Krimer] v. Krimer, 13 N Y 2d 22, 27, supra).
However, if during the lifetime of both, one joint tenant without the consent or ratification of the other, unilaterally withdraws more than his moiety, the other joint tenant may recover the excess withdrawn. The joint tenancy is not destroyed. It is unaffected by the wrongful act. However since the right of survivorship has not as yet vested in one or the other, the “ wronged ” joint tenant is limited in his recovery to the excess withdrawn (Commrade v. Commrade, 29 A D 2d 871; Walsh v. Walsh, 29 A D 2d 991, supra; Williams v. Menz, 20 A D 2d 749).
This much is clear and is consistent with the concept and legal consequences of a jont tenancy.
The cases are not clear however as to the consequences when one of the joint tenants has withdrawn more than his moiety and the right of survivorship has thereafter vested in one upon the death of the other. If the survivor is the one who has withdrawn the fund, the proceeding will be by the estate of the deceased joint tenant against the survivor; if the decedent joint tenant is the withdrawer, the proceeding will be by the survivor against the estate.
As has been discussed, under the joint tenancy concept the survivor necessarily takes all no matter what the circumstances. If the decedent joint tenant was the “ wrongful ” withdrawer, the survivor takes the whole fund by reason of the nullity of the transaction. If the survivor was the 11 wrongful ’ ’ with-drawer, he takes the whole fund for the same reason. In short, there are no circumstances in which the survivor will be entitled to less than the whole fund where one of the tenants has with *830 drawn more than his moiety and the right of survivorship has vested in either one of them since a withdrawing joint tenant can only suffer a forfeiture to a survivor in whom that right has vested.
In short, after a right of survivorship has vested, there should in legal theory never be a recovery of half the fund or the excess over the moiety. The survivot must take all. Only while both joint tenants are still living may the recovery be for the excess over the moiety withdrawn.
Such issues have been before the appellate courts on at least a dozen occasions. While in most cases the courts have adhered to the legal principles applicable to the joint tenancy concept, there have been departures in rulings and in dicta. These have caused confusion for the trial courts as is evident from the excellent discussion of these recurring problems in Matter of Kramer (54 Misc 2d 459).
We discuss first the decisions in cases where the decedent joint tenant was the “wrongful” withdrawer, i.e., where the survivor joint tenant is claiming against the estate of the decedent withdrawer. This is the area where the legal principles discussed should be especially clear.
In all of the early cases and in the majority of all cases, the courts have awarded to the survivor, as was required in a true joint tenancy, the whole of the fund withdrawn. In few however had the courts discussed the reason (O’Connor v. Dunnigan, 158 App. Div. 334, affd. 213 N. Y. 676, supra; Matter of Klenk, 165 App. Div. 917, affd. 214 N. Y. 715; Marrow v. Moskowitz, 255 N. Y. 219, supra; Matter of Murphy, 23 A D 2d 866). These cases have been followed by the lower courts (Matter of Hirsl, 48 Misc 2d 723; Matter of Kramer, 54 Misc 2d 459, supra; Matter of Kessler, 55 Misc 2d 17).
Without spelling out any rationale, the courts in all of these cases treated the fund withdrawn as though it continued untouched in joint tenancy between the joint tenants and awarded the whole fund to the survivor as if no withdrawals had been made during the lifetime of the joint tenants. It is interesting to observe, though not essential to the decision, that in each ease the fund was redeposited either in the name of the decedent or in an account with someone else.
However the Court of Appeals in two decedent-withdrawal cases, in dicta, indicated that the survivor might only be entitled to the excess over the moiety as though the “ wrongful ” withdrawal by the decedent had not been a nullity. In Walsh v. Keenan (293 N. Y. 573, supra) the lower courts had found a *831 true joint tenancy but nevertheless had awarded the survivor only half of the whole fund withdrawn by the decedent. The majority of the Court of Appeals reversed finding no true joint tenancy. The minority found a true joint tenancy and expressly held that the survivor was entitled to half the fund. The majority made no comment with respect to the nature of the award below or the express statement of the minority. It should be observed, for later discussion, that the decedent was the donor-creator of the fund. The second dec e<2 ewf-withdrawer case was Matter of Bricker (Krimer) v. Krimer (13 N Y 2d 22, supra). Here the Court of Appeals ordered a new trial to determine if a true joint tenancy had been created. But, in dicta, the court itself indicated that if a true joint tenancy was established at the new trial, the survivor would be entitled to one half of the whole fund withdrawn by the decedent. Here too it is observed that the decedent was the donor-creator of the fund.
The dicta in Bricker was followed in a number of lower court decisions (see e.g., Ushinsky v. Landis, 23 Misc 2d 87; Matter of Libow, 46 Misc 2d 919).
These two decisions either blur the doctrine of joint tenancy or the results are controlled by reasons not stated by the courts.
We turn to a consideration of the cases where the survivor joint tenant was himself the “ wrongful ” withdrawer of more than a moiety or the whole fund. The estate of the deceased joint tenant will be claiming against the survivor.
Two such cases reached the Court of Appeals (Matter of Porianda, 256 N. Y. 423, supra; Matter of Juedel, 280 N. Y. 37, supra). In both cases the lower courts following and citing Marrow v. Moskowitz, supra, a dieceiewi-withdrawer case, held that the survivor-withdrawer as well, despite his ‘ ‘ wrongdoing ” was entitled to keep the whole fund as against the estate of the deceased joint tenant. In both cases, the Court of Appeals reversed the finding that a true joint tenancy had been created. The court made no comment on and presumably approved in theory the award of the courts below of the whole fund to the survivor-withdrawer. The whole fund was awarded in several lower court cases (see e.g., Matter of Leakes, 163 Misc. 285; Matter of Malone, 24 Misc 2d 133). The results however were clearly right. There can be no “ forfeiture ” by a survivor even though he is a “ wrongdoer ’’-withdrawer.
Some doubt however is cast upon such result by two recent cases, both however dicta. In Matter of Leisner (25 A D 2d 844 [1st Dept.], affd. 19 N Y 2d 869, supra) the Surrogate had *832 directed the SMnwor-withdrawer to return one half of the whole fund withdrawn by him to the estate of the deceased joint tenant. The First Department reversed, finding that the withdrawals by the survivor had been consented to or ratified by the decedent joint tenant prior to his death. However it commented, in dicta, that otherwise the Surrogate would have been right in requiring the survivor to return one half of the fund withdrawn. Here, it is noted for later discussion, the decedent was the donor-creator of the deposit. In a second case, Gommrade v. Gommrade (29 AD 2d 871, supra), the action was between two living joint tenants. A decision had been rendered properly ordering the withdrawing joint tenant to return the excess over the moiety. After the verdict the successful joint tenant died and the losing ‘ ‘ wrongdoer ’ ’ as the survivor sought to retain the whole fund. The Second Department held that the verdict should stand but in dicta indicated that a distinction should be made between a ‘‘ wrongdoer ’ ’-survivor and a ‘1 wrongdoer ’ ’- decedent. Here again the joint tenancy concept is blurred by dicta.
Obviously some confusion exists. It is suggested that there is no confusion with respect to the principles of law governing joint tenancies and the legal incidents thereof.
In a few cases where the appellate courts appear to depart from the accepted legal principles, it is from a desire to do justice in the given case. The remedy and probably a desirable remedy is not to depart from but to abolish the concept of joint tenancy and adopt a statutory “ contract ” concept for joint bank deposits.
From an examination of the factual patterns in the cases discussed, the obvious problem is the persistence of the donordonee relationship. But when a true joint tenancy is created, the donor-donee relationship no longer exists. Yet courts have favored the donor-creator even when he was the “ wrongdoer ” decedent (Walsh v. Keenan, 293 N. Y. 573, supra; Matter of Bricker [Krimer] v. Krimer, 13 N Y 2d 22, supra), as well as when he was the “ victim ’’-decedent (Matter of Leisner 25 A D 2d 844, affd. 19 N Y 2d 669, supra) by suggesting in dicta that his estate was entitled to half the fund from the survivor. This is the corollary to the rule already discussed that the withdrawal of the whole fund by the donor is evidence that no true joint tenancy was intended. Vestiges of his favored donor status continue to cling even after a true joint tenancy has been established.
In a true joint tenancy legally speaking there can be no such relationship as “ wrongdoer victim ”, terms sometimes *833 employed by the courts. If one is a true joint tenant, like a member of a partnership, he cannot steal from his other joint tenant. He owns an undivided one half. He can withdraw all but must account for half during his lifetime. If he becomes the survivor he owns the whole fund; he cannot have been guilty of stealing from himself.
As a practical proposition few fact patterns in the cases indicate an intention to harm or defraud a joint tenant. In most cases withdrawals will be made under a claim of right, e.g. by a donor-creator on the theory that no true joint tenancy exists. Or by a donee joint tenant, who anticipating the expected death of the other joint tenant withdraws the fund to protect it from possible claims of other beneficiaries or distributees. The latter is the instant case. The facts are only briefly mentioned.
Before Mrs. Filfiley died she had converted what was theretofore a Totten trust account for her daughter Alice into a joint account with her. The total deposit was $19,000. The day before her mother died, Alice withdrew the entire deposit and redeposited it in an account in her own name where it remains.
Alice is the executrix and a legatee under her mother’s will. The husband of decedent has filed a notice of election to take against the will. He seeks to bring the joint account into the estate.
At the trial the husband sought to prove that this was not a true joint tenancy account but rather a “ convenience ” account; also that testatrix lacked mental capacity at the time she created the joint account. Alice sought to prove prior authorization for her withdrawal. Both sought to prove that they, not Mrs. Filfiley, were the source of the funds — proof hardly material since Mrs. Filfiley was on bank records the donor-creator.
Largely but not solely because of CPLB. 4519 neither party proved any of their respective contentions. The statutory presumption therefore prevails. On the basis of the presumption and also other competent evidence, it is concluded that this was a true joint tenancy. Alice as the surviving joint tenant is entitled to the whole fund. Her withdrawal of the whole fund the day before her mother’s death is a nullity — necessarily so since more than a moiety is unilaterally inalienable by either joint tenant.
This last is the only single rationale adequate to explain the results of the high court cases discussed.