Fritz W. Alexander, J.
This nonjury action, commenced during the lifetime of all three defendants, seeks to vindicate the rights of the plaintiff to certain funds previously on deposit in a joint bank account maintained in the name of plaintiff and Bertha Schwartz. During the pendency of the lawsuit, Bertha Schwartz died, and the action was discontinued against her.
The complaint alleges, and the evidence adduced establishes as the fact, that on or about November 1, 1968, there was on deposit with the Dry Dock Savings Bank, the sum of $9,857.27, in an account entitled "Bertha Schwartz or Rene *178 Schwartz, payable to either or the survivor.” It is uncontradicted that the bulk of these funds derived from the redemption of United States savings bonds, purchased by the late husband of Bertha Schwartz, in the name of Bertha Schwartz and Rene Schwartz. It should be noted at this point that Rene and David are brother and sister, children of Bertha and that Miriam is David’s wife.
It appears that in the latter part of 1968, Bertha Schwartz, who was of advanced age became very forgetful and senile, unable to properly care for herself, and in consequence of this development she implored David and Miriam, apparently without Rene’s knowledge, to place her in a nursing home.
David’s testimony in this regard, was that it was his mother’s idea that she be placed in a nursing home and she instructed him to use "her” money to defray the expenses because she didn’t want "charity”.
Although there was conflicting testimony as to exactly how it was accomplished, the clear fact is that on November 6, 1968, David presented himself at Dry Dock Savings Bank with the passbook and a withdrawal slip executed by Bertha Schwartz and withdrew the entire balance then on deposit in the afore-mentioned account. He received the funds in a bank check payable to the order of Bertha Schwartz, which she endorsed and delivered to Miriam, who in turn deposited the funds in an account at the Tremont Savings and Loan Association, entitled "Miriam Schwartz, ITF Bertha Schwartz (mother-in-law)”. Shortly after this transaction was completed Bertha entered the nursing home. The testimony establishes that the entire fund was used exclusively to pay the expenses of this nursing home care and a part of Bertha’s burial expenses. (Bertha died in February, 1971, while this action was pending.)
In the first cause of action in her complaint, Rene initially charged David and Miriam with wrongfully inducing Bertha to withdraw these funds from the joint account and sought to have a trust impressed upon the funds in their hands. Additionally, she charged all three defendants with conversion and "money had and received” and sought recovery of the funds wrongfully withdrawn. While none of these theories "nicely” present the questions, the answers to which are dispositive of this lawsuit, and though no motion was made to conform the pleadings to the proof, the court can and does deem the *179 pleadings so amended. (CPLR 3025, subd [c]; Procho v Procho, 30 AD2d 615; Friscia v Safeguard Ins. Co., 57 Misc 2d 759.)
Given the fact that the bank account in question is truely a “joint savings account” (Banking Law, § 675), and the court so finds, no serious question exists in respect to the liability of Bertha Schwartz that flows from her wrongful withdrawal of the entire balance on deposit in said account on November 6, 1968. (See Matter of Filfiley, 63 Misc 2d 824 and cases cited therein.) As pointed out by Surrogate Sobel in a scholarly and exhaustive opinion (63 Misc 2d 824, 829, supra): "if during the lifetime of both, one joint tenant without the consent or ratification of the other, unilaterally withdraws more than his moiety, the other joint tenant may recover the excess withdrawn. The joint tenancy is not destroyed. It is unaffected by the wrongful act. However since the right of survivorship has not yet vested in one or the other, the 'wronged’ joint tenant is limited in his recovery to the excess withdrawn [citing cases]”. (Emphasis in original; see, also, Commrade v Commrade, 29 AD2d 871; Walsh v Walsh 29 AD2d 991; Williams v Menz 20 AD2d 749.)
At the time this action was commenced therefore, under the facts here adduced, plaintiff was entitled to recover against her mother, one half of the sum withdrawn.
Similarly, it is clear that the defendants David and Miriam, by reason of their participation in the wrongful acts of Bertha, "converted” property belonging to plaintiff and consequently are answerable therefor.
A conversion is defined as “any distinct act of dominion wrongfully exerted over another’s personal property in denial or inconsistent with his rights therein.” (Meyer v Price, 250 NY 370, 381; Koslow v Bletterman, 23 Misc 2d 340.)
These defendants argue, essentially, that they acted in good faith, at Bertha’s direction and that they derived no beneficial use of the funds; indeed they insist that "every penny” of the money was used to pay for the mother’s nursing home care. Suffice it to say, in answer to the good faith argument, that "wrongful intent is not an essential element of the conversion” (Boyce v Brockway, 31 NY 490, 493). It is entirely immaterial to the issue here under consideration, even if that were the fact, that these defendants acted in good faith under the direction of Bertha Schwartz or that they derived no beneficial “use” of the money in the ordinary sense, for the essence of the wrong (the conversion) is that "the use and *180 possession were dealt with in a manner adverse to the plaintiff and inconsistent with his right of dominion.” (Pierpont v Hoyt, 260 NY 26, 30.)
The more troublesome aspect of this case results from the fact that under the authorities of this jurisdiction, the scope of the right of recovery of the surviving joint tenant enlarges, upon the death of the withdrawing joint tenant, to encompass the whole of the fund wrongfully withdrawn. (Matter of Filfiley, 63 Misc 2d 824, supra.) This is for the reason that an inchoate right of survivorship is an essential element of the joint tenancy and the wrongful act of the withdrawing joint tenant is ineffectual to destroy or in any way affect this right. (Matter of Filfiley, supra.)
The question, then is whether the complicity of David and Miriam in the conversion results in liability coextensive with that of their coconverter, Bertha Schwartz. It is this court’s view that the facts strongly compel an affirmative answer. Indeed, it will be remembered that the funds in question were transferred to an account that was and until its exhaustion, continued to be under the exclusive control of Miriam Schwartz. It is her testimony, supported fully by that of David, that "every penny” of the fund was disbursed to the nursing home, by her, to pay the expenses of Bertha’s care. Her exercise of dominion and control over the fund, in derogation of plaintiff’s expectant right to the whole thereof continued up to and beyond the time that right vested. The total destruction of that right of survivorship is as much a wrong done to this plaintiff as was the initial wrongful withdrawal.
For the foregoing reasons, it is the conclusion of this court that plaintiff is entitled to receive of the defendants David Schwartz and Miriam Schwartz, the sum of $9,857.27, together with interest thereon computed from November 6, 1968 and the clerk is directed to enter judgment in favor of the plaintiff accordingly.