John M. Keane, S.
In form this is a proceeding pursuant to SCPA 1809 brought by the executor of the last will and testament of Paul Imp, deceased, for the determination of a claim which had been filed against said estate by the administrator of the estate of Celia K. Bates in the amount of $45,000, which claim had been rejected. Although cast in the form of a claim, the proceeding really concerns the title to a farm located in the Town of Hamden, Delaware County, New York, and a bank account in the First National Bank, Hamden, N. Y. To understand the discrepancy between the form of the proceeding and the actual controversy, a recital of the facts is necessary.
On February 12, 1949 the farm was conveyed in the following language to the grantees, “ Paul Imp and Celia Imp, his wife, of Livingston Manor, County of Sullivan, State of New York, as tenants by the entirety.” At the end of the description of the real property there was the following paragraph: “It is the intention of the parties of the second part (Paul Imp and Celia Imp) that they shall hold title as tenants by the entirety, the survivor to take the whole title.” (Words italicized added for clarity.) The habendum clause makes no reference to survivorship. The grantees assumed an existing mortgage and signed the deed as “ Paul Imp ” and “ Celia Imp.”
On April 18, 1949 an account was opened in the names of “ Paul & Celia Imp ” in the First National Bank, Hamden, N. Y. with a deposit of $4,320.64, according to the ledger sheets of the bank admitted into evidence. Also admitted into evidence was a signature card entitled, “ Joint Account,” stating that the account was “ payable to either of us, or to the survivor.” This card was signed by Paul Imp and Celia Imp. This card has no date but does contain the number 1838 which appears as the account number on the ledger sheets.
Celia K. Bates, also known as Celia Imp, died February 10, 1969. Paul Imp sold the farm on September 9,1969 for $21,500, *913 He died October 5, 1970. At the time of his death, the balance in the account of the First National Bank, Hamden, N. Y., was $29,441.02.
Paul Imp and Celia K. Bates were never married to each other. Celia K. Bates was survived by a son who is the administrator of her estate. It is his contention that the title to the real property was not jointly held and further that, since Celia K. Bates contributed the greater part to its increase in value, the substantial portion of the $21,500 sale price belongs to her estate.
The son of Celia K. Bates testified that the farm was operated as a dairy farm. He stated that he lived and worked on the premises for a short time after its purchase but was unable to get along with Paul Imp. In 1950 he re-enlisted in the United States Navy Where he served for 20 years before retiring. According to his testimony, his mother was a strong, hardworking woman who did the substantial part of the farm work.
She had met Paul Imp while earing for bfm in a hospital where he was being treated for tuberculosis. According to the testimony of the son of Celia K. Bates, Paul Imp was never able to do Ms share of the farm work because of his poor health. He further testified that all of the business was carried on by his mother. He testified that both his mother and Paul Imp were immigrants with a limited knowledge of the English language. However, he did state that his mother became a naturalized citizen in 1941.
A few years before her death, Celia K. Bates apparently was injured on the farm and never really recovered. As mentioned earlier, she died on February 10, 1969. "When Paul Imp died on October 5, 1970, his last will and testament admitted to probate in tMs court made no provision for the son of Celia K. Bates.
Robert T. Bates was appointed by this court as administrator of the estate of Celia K. Bates on February 1, 1971, almost two years after her death. Shortly thereafter the claim which is the basis of tMs proceeding was served upon the executor of the estate of Paul Imp and rejected by Mm.
Since Paul Imp and Celia K. Bates were not married to each other, it is the contention of her estate that the deed received in 1949 was ineffective to convey title in joint tenancy.
As to the bank account, it is her estate’s argument that (1) there was no intention to create a joint account, and (2) most of the deposits represented the efforts of Cfelia K. Bates and, therefore, the substantial portion of the account should be paid to her estate. There was some testimony about social security benefits wMch Celia K. Bates received as the widow of her hus *914 band, but these were received for only about one year prior to her death and are not a significant factor in this proceeding.
The estate of Paul Imp contends that the language of the deed when examined as a complete instrument meets the requirements to vest title in the two parties as joint tenants. As to the bank account, the estate of Paul Imp contends that under section 675 of the Banking Law, the title to the balance on the death of Celia K. Bates belonged to Paul Imp. The estate of Paul Imp maintains that the burden of overcoming the rebuttable presumption under section 675 was not met by the estate of Celia K. Bates.
There is no question that a deed which in language conveys title to persons as tenants by the entirety when, in fact, they are not married to each other does not create such a title. Other language must be present to create a joint tenancy with right of survivorship. The attorney who prepared the deed in 1949 testified at the hearing. He had no independent recollection of the particular transaction. He testified about his practice in advising grantees about the various methods of taking title.
Subdivision 3 of section 240 of the Beal Property Law provides : “ 3. Every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the. intent of the parties, so far as such intent can be gathered from the whole instrument, and is corn sistent with the rules of law.”
EPTL 6-2.2 (subd. [a]) provides that a disposition of property to two or more persons creates in them a tenancy in common unless expressly declared to be a joint tenancy. The estate of Celia K. Bates argues strongly that, since the habendum clause contains no language of survivorship, the deed does not create title jointly with the right of survivorship.
This contention fails to consider the last paragraph following the description quoted above where it is expressly stated that the intention was for the survivor to take all. This paragraph acquires added significance when one considers that the grantees also signed this deed because they were assuming an existing mortgage.
A case quite similar to the one before the court is Clearo v. Cook (11 Misc 2d 916 [1958]). The grantees were not married to each other. The deed conveyed title as tenants by the entirety. Directly after the names of the grantees appeared this language: ‘ ‘ (It is the purpose of this conveyance to be tenants by entirety and not tenants in common.) ” It would serve no purpose to repeat the concise reasoning appearing in Clearo v. Cook *915 (supra), by which the court determined that a joint tenancy was created.
A later decision is Place v. Cundaro (34 A D 2d 698 [1970]) in which discussion concerns whether a joint tenancy was created where the grantees were not married to each other. The court found that a tenancy in common was created because po express language existed to sustain a joint tenancy. A more recent decision is Crawley v. Shelby (37 A D 2d 673 [1971]) where a joint tenancy was upheld on language less specific than found in the deed before this court.
In Giudici v. Lofaso (199 Misc. 401 [1951]) there was language of survivorship in the habendum clause. The court found a joint tenancy had been created. In Gaza v. Gaza (247 App. Div. 837 [1936], affd. 272 N. Y. 617 [1936]), language of survivorship, again in the habendum clause, was sufficient to create a joint tenancy.
The location of the specific language is not significant. Its existence or nonexistence is the crucial question. Here at the end of the description was language that survivorship was intended.
This court determines that the language quoted from the deed to Paul Imp and Celia Imp above is sufficient to create a joint tenancy. Therefore, upon the death of Celia K. Bates named in the deed as Celia Imp, wife of Paul Imp, the title vested in Paul Imp as the surviving joint tenant.
It was argued strongly by the estate of Celia K. Bates that the records of the bank introduced in evidence were ambiguous in disclosing the nature of the account. It is true that the original signature card contains no date. However, it does have the number 1838 which appears on the bank ledger sheet opened in 1949 and which was admitted into evidence. The signature card states, as mentioned previously, that the account is a joint account. The signature card has on it other notations when the account numbers were changed, the last time being occasioned by a lost passbook in 1963.
The marital relationship, or lack of it, as far as bank accounts are concerned, is not significant, because in New York tenancy by the entirety does not exist in personal property. Section 675 of the Banking Law creates a rebuttable presumption that the survivor is entitled to the whole account. The burden of proof in refuting such prima facie evidence is upon the one challenging the title of the survivor. Here such burden of proof must be borne by the estate of Celia K. Bates which is challenging the title of Paul Imp to the balance.
*916 Joint "bank accounts have generated more than their share of litigation. It is true that many of them involved accounts in savings hanks which were controlled by subdivision 3 of former section 239 of the Banking Law, which had a ‘ ‘ conclusive presumption ” as to ownership in the survivor. The Temporary Commission on Estates (Report No. 5.12.1A; N. Y. Legis. Doc., 1964, No. 19, p. 366), made a study concerning the uncertainty which had developed in the area of joint bank accounts. Section 675 was enacted upon the recommendation of the Temporary Commission on Estates and adopted the so-called commercial bank rule concerning the burden of proof.
The estate of Celia, K. Bates produced no evidence to sustain its claim about intentions when the account was opened. The bank officers had no independent recollection about the opening of this particular account. Proof was offered concerning the industry of Celia K. Bates pn the farm and her attention to the banking of the couple. A bare allegation that an account was opened for convenience does not overcome the burden imposed by section 675 of the Banking Law. (See Poersch v. Eldridge, 36 A D 2d 193 [1971] and Mitchiner v. Bowery Sav. Bank, 31 A D 2d 803 [1969].) The evidence submitted was insufficient to overcome the presumption granted by the statute.
Matter of Creekmore (1 N Y 2d 284 [1956]) is not apposite to support the claim of the estate of Celia K. Bates, because section 675 of the Banking Law has changed the law regarding burden of proof when the title of the survivor is challenged. Matter of Bricker v. Krimer (13 N Y 2d 22 [1963]) involved lifetime withdrawals and creation of k different account in joint form. To the extent that Matter of Creekmore (supra) was followed in the Krimer case on burden of proof, this court believes that section 675 has provided otherwise.
A fairly recent case involving a similar attack on a joint bank account, which was thoroughly litigated, is Matter of Reardon, first reported in 25 A D 2d 370 (1966). In that decision, the Appellate Division stated that section 675 of the Banking Law was procedural in nature and, therefore, applied to matters which occurred prior to its effective date of June 1, 1965. The Appellate Division stated that the Surrogate erroneously charged the jury that the effect of section 675 was a matter of substantive law and sent the matter back for a new trial.
The results of the second trial are reported in 52 Misc 2d 371 (1966). An examination of the decision gives a good example of the evidence necessary to overcome the presumption that the survivor takes any balance. Upon all the evidence before him, *917 Mr. Surrogate McGrath directed that the surviving tenant was not entitled to the account and directed payment to the estate of the deceased joint tenant. His decision was affirmed in 29 A D 2d 630 (1967) and in 22 N Y 2d 928 (1968).
When the evidence offered in the proceeding before this court is compared to that set forth in the decision of Mr. Surrogate McGrath, it is clear that it falls far short to sustain the claim of the estate of Celia K. Bates that this was an account for convenience only.
Decisions were cited by the estate of Celia K. Bates to support the contention that the sources of the funds were relevant. These cases involved disputes between living persons and are distinguishable from the facts here where both parties are deceased.
The estate of Celia K. Bates attempted to submit evidence of oral statements made by her during her lifetime concerning her wishes for the disposition of her property. Objections to this testimony were sustained, primarily upon the ground that it was speculative and not of sufficient quality to determine the question at hand. In a few instances, prior to the objection by counsel which was sustained, the witness had indicated that Celia K. Bates wished her property to pass to her son.
Based upon all the evidence, the court determines that the title to the joint bank account vested in Paul Imp as the surviving joint tenant.
The facts here illustrate very clearly the vagaries inherent in holding property in joint ownership. According to the testimony, Celia K. Bates was strong, healthy and industrious, while Paul Imp was weak, sickly and unable to carry on a full share of work. Yet, in the end, she predeceased him and possibly upset the expectancy that one normally might have expected as far as the final disposition of their property was concerned.
The claim of the estate of Celia K. Bates is dismissed, without costs.