Bertram R. Gelfand, S.
In this discovery proceeding, the estate seeks to recover from a niece of decedent certain sums of money which the petitioner alleges are the property of the estate and are in the possession of the respondent.
Decedent died on March 31, 1972 at the age of 91. Until October, 1968, she occupied an apartment jointly with her daughter. In that month her daughter died and decedent continued to occupy the apartment alone until August 20, 1970. During that period, she was assisted by various hired people. From August 20, 1970 until her death decedent was a resident of a nursing home. During the period that the decedent resided alone, respondent resided in another apartment in the same building. At a date which was never definitively established by either party at the hearing, decedent opened a savings account at the Bankers Trust Company with the respondent niece as a joint tenant with right of survivorship. The testimony does suggest that this account was opened at sometime during 1969. Respondent conceded that on August 31, 1970, she withdrew $1,094.90 from this joint account. At the hearing respondent testified that this withdrawal was by bank check payable to the Fieldston Lodge Nursing Home for the benefit of decedent. No other evidence was offered to support this claim as to use of the money and other credible evidence established that the nursing home records of payments on behalf of decedent fail to reflect any payment in the amount of this withdrawal. Respondent further conceded that in March, 1971, she withdrew the sum of $5,469.89, the then entire balance in the Bankers Trust Company account, and transferred it to an account in the name of herself and her husband, as joint tenants. All of the funds in the joint account were deposited therein by decedent.
Absolutely no evidence was adduced at the hearing to in any way impngn the presumptions in favor of respondent’s joint *637 tenancy created by section 675 of the Banking Law. However, the undisputed testimony indicates that the respondent withdrew more than her moiety in this account. Respondent failed to establish that either withdrawal was in any way with the consent of decedent or for the benefit of decedent. There is no question that had the joint account remained intact until the death of the donor-joint tenant, the respondent would have gained title to said account as the surviving joint tenant by operation of law. The question presented for the court’s determination is whether respondent having withdrawn from the account more than her moiety during decedent’s lifetime without establishing at this hearing that such withdrawals were either with the consent or for the benefit of decedent now has title to the excess above her moiety or is such excess an asset of the estate which must be returned to the estate. The Court of Appeals in dicta as recently as Matter of Bricker v. Krimer (13 N Y 2d 22, 27) cited as the law of New York the rule previously set forth in Walsh v. Keenan (293 N. Y. 573, 578); Matter of Juedel (280 N. Y. 37); Matter of Suter (258 N. Y. 104); Marrow v. Moskowits (255 N. Y. 219), and Moskowits v. Marrow (251 N. Y. 380) to the effect that a joint tenant withdrawing more than her moiety from a joint account during the life of the decedent, is obligated to return to the estate that amount which exceeds her moiety (Matter of Enis, 48 Misc 2d 548; see, also, Commrade v. Commrade, 29 A D 2d 871). Since Matter of Bricker v. Krimer (supra) there have been several determinations in which surviving joint tenants who withdrew more than their respective moiety during the life of the other joint tenant were permitted to retain the full amount withdrawn (Matter of Kessler, 55 Misc 2d 17, affd. 35 A D 2d 710, affd. 30 N Y 2d 821; Matter of Leisner, 25 A D 2d 844, 845; Matter of Filfiley, 63 Misc 2d 824). Each of the latter decisions appears to be based upon the conclusion that the inter vivos withdrawals in excess of moiety by the surviving joint tenant during the lifetime of the decedent were on the facts of those cases so consistent with the clear desires of the decedent so as to have been made with the consent of the decedent. That was not the circumstance in this case. There was a complete absence of any proof whatsoever of any direct or implied consent by the decedent authorizing the respondent to withdraw the entire proceeds of the joint account at the time it was done by the respondent nor any ratification thereafter during the life of the decedent.
It is not the law of this State that a withdrawal in excess of moiety by a joint tenant from a savings account has no impact if the party making such withdrawal is fortunate enough to *638 survive the other joint tenant. With due consideration for the very learned and very exhaustive discussion in Matter of Filfiley (supra) it is the opinion of this court that sound reasons of public policy continue to sustain the validity of the rule as expressed in Matter of Bricker v. Krimer (13 N Y 2d 22, supra).
When Mrs. Lang created this account she gave respondent no more than a presumed present interest in the account with a right to the other half depending upon survivorship. There is nothing to indicate that Mrs. Lang did not wish to keep at least her half of the account available for her use during her lifetime. It is not enough to say with reference to an extremely aged woman confined in a nursing home that if she wished to retrieve her half of the account she could have litigated in her lifetime to accomplish this end. Respondent by withdrawing the full balance of the account significantly changed the position of her joint tenant. From the joint tenant being able to make withdrawals by the simple act of signing a withdrawal slip, she was reduced to demand from, and possible litigation against, her joint tenant in order to derive use, enjoyment or benefit from the joint account.
To countenance this circumstance would sanction a rule of law which rewards the swift at the expense of the infirm. This would reduce every joint tenancy to a transfer of the entire account to the joint tenant capable of reaching the bank fastest subject only to the other tenant’s seeking by litigation that which was wrongfully taken from him. Accordingly, the court finds that at the time respondent made the withdrawals she had the right to no more than her moiety and that the withdrawn funds upon being removed from the account without the consent of the joint tenant, were no longer subject to the right of survivorship that existed in the account. This right of survivorship was destroyed by the unilateral act of the respondent prior to its coming into operation by the death of the decedent. Respondent is, therefore, obligated to return to the estate that amount which exceeds her one-half moiety in the account which is the sum of $3,282.40.
It appears from the record that the joint account was funded by withdrawals on various dates in 1969 from another bank account which decedent had in her own name. The allegations as to any impropriety with reference to these withdrawals were not sustained by the evidence. Similarly, the mere fact that there were certain monthly Social Security payments of decedent which are not reflected in the deposits into decedent’s bank account in no way establishes that these funds were con *639 verted by the respondent. The payments involved never exceeded approximately $42 in any one month. There can be innumerable explanations as to what decedent did with these checks besides deposit them in a bank account. There was no proof adduced that the checks ever came into respondent’s possession. Any conclusion that respondent received these funds, let alone converted them to her own use, would be based on pure speculation and this cannot be the basis for the estate’s recovering such funds from respondent (Matter of Rabinowits, 5 Misc 2d 803, 804; Matter of Lowe, 148 Misc. 107; Matter of Ribaudo, N. Y. L. J., July 31, 1973, p. 11, col. 6). Accordingly, upon respondent’s motion to dismiss the petition at the conclusion of petitioner’s case and upon the entire case, the petition is dismissed, except to the extent as heretofore determined that respondent must return to the estate the sum of $3,282.40, representing the amount in excess of her moiety that she withdrew without the decedent’s consent from a joint account during the lifetime of decedent, the joint tenant.