■ In the Matter of GINA GIAMMARINO, Petitioner, v STEPHEN BERGER, as Commissioner of the New York State Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent State Commissioner of the Department of Social Services, dated August 29, 1975 and made after a fair hearing, which

affirmed a determination of the respondent Commissioner of the Nassau County Department of Social Services, which denied petitioner's application for medical assistance in the form of nursing home care. Petition granted to the extent that the determination is annulled, on the law, without costs or disbursements, and the matter is remanded to the respondent State commissioner for a redetermination of petitioner's available assets in accordance with the provisions of subdivision 2 of section 366 of the Social Services Law. Petitioner's application for medical assistance in the form of nursing home care was denied on the ground that she had transferred the proceeds of a joint account to her daughter and only child, Mrs. Rosalie Ippolito, in violation of section 366 (subd 1, par [e]) of the Social Services Law, which bars the application of one who has "made a voluntary assignment or transfer of property for the purpose of qualifying for [medical] assistance." Under that provision a "transfer of property made within one year of the date of application shall be presumed to have been made for the purpose of qualifying for such assistance." At a fair hearing, which the 85-year-old petitioner could not attend because she was confined to a nursing home, she was represented by her daughter, who gave evidence showing that the funds could be traced to an account opened in 1959 by petitioner's daughter and petitioner's late husband, with an initial deposit of $13,200. Of that amount, $11,500 had been accumulated by the daughter during the 17 years that she had been employed at a salary ranging from $6,000 to $7,000 a year. The father was then unemployed and had no source of income except his Social Security benefits. The balance of the original deposit represented moneys of the father. Subsequently, in 1959, petitioner and her husband purchased a small bungalow in New Jersey for $4,000. That sum was drawn from the afore-mentioned joint account. In 1960, the parents spent $3,500 for improvements to the bungalow. That amount also came from the said joint bank account. When the father died in 1969, the daughter closed out the joint account by withdrawing $3,100, which was turned over to the petitioner. After paying the funeral expenses of the father, which amounted to about $1,200, there remained $1,900, which the petitioner deposited in a joint account in the names of mother and daughter in the Richmond Hill Savings Bank. The New Jersey property was sold in 1969 and petitioner took back a mortgage from the purchaser. The mother lived with her daughter, without paying any board, from the time the father died until she entered the nursing home in October, 1974. In 1970, when the mortgage was satisfied, the proceeds of $10,800 realized therefrom were deposited in a joint account which had been opened by petitioner and her daughter on September 19, 1968. In October, 1974 the account was closed and the funds then on deposit were divided equally between petitioner and her daughter. Despite the uncontradicted history of the dealings between petitioner and her daughter, and despite the strong statutory presumption embodied in section 675 of the Banking Law, the respondents ruled that the 1974 division of the joint account constituted a violation of section 366 (subd 1, par [e]) of the Social Services Law. That determination is without foundation and must be annulled. The record unequivocally establishes that the 1974 division of the joint account constituted nothing more than a return to petitioner's daughter of moneys to which she was entitled. Section 366 (subd 1, par [e]) of the Social Services Law prohibits spurious transactions by applicants for public assistance; it does not bar the lawful repayment of a long-standing debt justly owed (see *Sweeny v D'Elia*, 49 AD2d 593). Furthermore, the determination under review could not stand even if the evidence merely established the division of a joint account. Upon the creation of a

joint account in the statutory form, each joint owner is presumptively vested with a one-half interest therein (Banking Law, § 675; *Matter of Kleinberg v Heller,* 38 NY2d 836 [concurring opn of Fuchsberg, J.]; *Matter of Sheehan,* 51 AD2d 645). One who challenges the presumption bears the heavy burden of rebutting it. Since no evidence was introduced to rebut this presumption, it can only be assumed that any transfer from petitioner to her daughter was effected in January, 1971, when the mortgage proceeds were deposited in the joint account in the names of petitioner and her daughter. Since joint tenants have the untrammeled right to terminate the joint account during their joint lifetimes (see *Matter of Sheehan, supra),* the 1974 division was merely a confirmation of the daughter's entitlement to her moiety of the joint account. Hopkins, Acting P. J., Martuscello, Cohalan, Damiani and Shapiro, JJ., concur.