ESTATE OF WALTER M. BUCHHOLTZ; ROBERT J. BUCHHOLTZ, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Buchholtz v. Commissioner
Docket No. 748-76.
United States Tax Court
T.C. Memo 1977-396; 1977 Tax Ct. Memo LEXIS 45; 36 T.C.M. (CCH) 1610; T.C.M. (RIA) 770396; November 15, 1977, Filed Peter J. Brevorka and Albert R. Mugel, for the petitioner. David R. Smith, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of *46 $11,435.99 in petitioner's Federal estate tax. The sole issue before us concerns the includability in decedent's gross estate of funds withdrawn by his son from joint savings accounts within two months preceding the decedent's death. FINDINGS OF FACT Some of the facts have been stipulated and are incorporated herein by this reference. Walter M. Buchholtz (decedent) died testate on March 2, 1972, a resident of Fredonia, New York. On March 20, 1972, his son, Robert J. Buchholtz (Robert), was duly appointed executor of the decedent's estate. Robert resided in Fredonia, New York, at the time the petition herein was filed. The Federal estate tax return for the decedent's estate was filed on November 30, 1972, with the internal revenue service center at Andover, Massachusetts.
Decedent died a widower at the age of 91 in a nursing home in Fort Lauderdale, Florida, where he had been in a coma for ten days prior to death. He was survived only by Robert. During his lifetime, decedent directed Robert to open four savings accounts in the names of Walter M. Buchholtz and Robert J. Buchholtz, jointly. Decedent provided all of the funds deposited to such accounts, which were opened *47 as follows: Account opened
Bank
10/20/59
Western New York Savings Bank
1/29/63
Manufacturers & Traders Trust Co.
3/ 2/64
Erie County Savings Bank
3/ 3/64
Buffalo Savings Bank
Additional deposits, all of which came from decedent's funds, were made to these accounts prior to October 31, 1968. From the time the accounts were opened, Robert was in possession of the passbooks. Decedent had the accounts opened in order to provide his son with funds for investment purposes. He encouraged Robert to withdraw funds and invest them for his (Robert's) benefit. All interest earned in respect of such accounts was reported by the decedent on his income tax returns. Prior to 1972, Robert's only withdrawals from the joint accounts were to shift funds from one joint account to another in 1968 and to purchase United States Treasury 3-1/4 percent "flower bonds" for his father's account in 1969. Robert had no prior discussions with his father concerning the initial purchase. Upon learning of the purchase, decedent was pleased and Robert made subsequent withdrawals in 1969 to purchase additional flower bonds. Robert explained to his father that the flower bonds eventually *48 would be used to pay his Federal estate taxes. During 1972 and prior to decedent's death, Robert withdrew the following amounts from the joint accounts: Date
Account
Amount
1/11/72
Manufacturers & Traders Trust Co.
$ 2,103.95
2/28/72
Manufacturers & Traders Trust Co.
4,451.56
2/28/72
Western New York Savings Bank
12,000.00
2/28/72
Erie County Savings Bank
12,000.00
2/28/72
Buffalo Savings Bank
12,000.00
Total
$42,555.51
The January 11, 1972, withdrawal was used by Robert to purchase stock in his own name. The February 28, 1972, withdrawals were shifted to new accounts in Robert's name only at each of the respective banks. Decedent and Robert shared an unusually close father-son relationship and, for a good portion of Robert's adult life, he shared his home with decedent. During his last years, decedent spent a portion of each year in Florida and a portion of each year at Robert's home. Although Robert had graduated from law school and passed the bar exam, he devoted his time to the family manufacturing business. From the summer of 1971 until his death, decedent was confined at a nursing home in Florida, suffering from advanced *49 cerebral arteriosclerosis. During his last illness, decedent had become extremely senile and required constant nursing supervision. Under the decedent's last will and testament, dated August 23, 1962, Robert was named executor and sole legatee. On Schedule G of the decedent's Federal estate tax return, the 1972 withdrawals from the joint accounts were reported as transfers during decedent's life, but were not included in the gross estate. [1]
OPINION During the period October 20, 1959, through March 3, 1964, four savings accounts were opened in the joint names of decedent and his son Robert. From the dates of such openings until some time in October 1968, deposits were made from time to time in such accounts. *50 All funds involved in these accounts came from the decedent. During the three-year period preceding death, five withdrawals from the accounts, aggregating $42,555.51, were made by Robert. The question is the amount, if any, of such withdrawals which should be included in decedent's gross estate under sections 2035 and 2033. [2] Both parties accept the proposition that state law (in this case New York) controls the question of the nature of an interest in property as the underpinning for decision as to how the Federal estate tax provisions should be applied. Greer v. United States,448 F.2d 937 (4th Cir. 1971); Wilson v. Commissioner,56 T.C. 579 (1971). [3]
*51 Petitioner argues that decedent made completed gifts of all the funds, at least for the purposes of the estate tax, at the time the accounts were established or, with respect to subsequent deposits, at the time those deposits were made. Respondent takes a diametrically opposite position, namely, that substantively no joint accounts were ever created and that, at all times, up until the withdrawals by Robert, decedent was the sole owner thereof. Both parties accept the applicability of N.Y. Banking Law, section 675 (McKinney 1971), which provides that the creation of a bank account in the form of a joint tenancy gives rise to a rebuttable presumption that such account is held as a true joint tenancy. [4] Each argues that the evidence rebuts that presumption and justifies our adopting his contention. *52 There is no question herein that the bank accounts were in the form of joint accounts. Although Robert testified that the decedent opened the accounts in order to provide Robert with funds for investment and encouraged him to use such funds, we find such evidence insufficient to overcome the presumption that decedent, who knowingly chose to make his deposits in joint form, intended to give Robert nothing more than a joint interest. By the same token, we do not think Robert's testimony that if, after the date of the last withdrawals, the decedent had miraculously recovered and requested him to return the withdrawn funds, he would have complied, necessarily requires the conclusion that the decedent never intended to create any joint tenancies and, therefore, at all times retained ownership of all of the funds deposited in joint form. Similarly, the fact that Robert had possession of the bank books is at best a neutral factor since this is totally consistent with his status as a joint owner. Nor are we prepared to say that the fact that Robert simply put the February 28, 1972, withdrawals in an account in his name without utilizing the funds is enough to tip the scales in favor *53 of retention of full ownership by decedent. In sum, we think that neither party has carried his heavy burden of overcoming the statutory presumption ( Giammarino v. Berger,55 App. Div. 2d 899, 390 N.Y.S. 2d 213 (2d Dept. 1977); cf. In re Will of Imp,68 Misc. 2d 911. 328 N.Y.S. 2d 595 (Del. County Sur. Ct. 1972)) and that consequently the presumption applies herein and the accounts in dispute were held as true joint tenancies. See and compare Filippi v. Filippi,53 App. Div. 2d 658, 384 N.Y.S. 2d 1010 (2d Dept. 1976).
Having so concluded, we next consider the applicability of sections 2035 and 2033 to the withdrawals by Robert during the three-year period prior to decedent's death. As to section 2035, both parties focus on Wilson v. Commissioner,supra, nonacq. as to this issue, 1976-2 C.B. 4. Respondent views this case as establishing a rule of law that the decedent's motives must be viewed as of the time the bank accounts were created and asks us to re-examine and reverse our position therein. See and compare Estate of Green v. Commissioner,64 T.C. 1049, 1065 (1975), *54 acq. in result 1976-2 C.B. 2. We think respondent misconceives the scope of Wilson. Admittedly, there is language in that case which tends to support respondent's interpretation (see Haneke v. United States,548 F.2d 1138, 1141 (4th Cir. 1977), affg. in part and revg. in part 404 F. Supp. 98, 105 (D. Md. 1975)), but, subsequent to Wilson, we clearly indicated that the point of time at which the decedent's motives should be viewed might well vary with the circumstances. See Estate of Zaiger v. Commissioner,64 T.C. 927, 938 (1975), acq. 1976-1 C.B. 1. We further indicated this view of Wilson, albeit in more muted terms, in Estate of Green v. Commissioner,supra.We think that the most that can be distilled from our recent decisions (all of which held in favor of the taxpayer) is that, while the critical point in time will often be when a joint bank account is opened or deposits made therein, a general guideline to this effect should not be elevated into an absolute rule of law. But see Haneke v. United States,548 F.2d at 1141 and 404 F. Supp. at 105. *55 In view of the foregoing, we see no need to accede to respondent's request. [5]
Based on our evaluation of the record herein, in the context of New York law (see p. 14, infra), we consider the factual texture of the instant case sufficiently similar to that which existed in Wilson,Zaiger, and Green as to lead us to conclude that a different result should not obtain under section 2035. [6] Notwithstanding his advanced age at the time he opened the accounts in question, we think the decedent was then in good health and wanted to see his son learn to make investments. It cannot be gainsaid that, in establishing such accounts, the decedent's motives were associated with life rather than death. *56 Finally, we turn to the question of the includability, under section 2033, of the excess of Robert's withdrawals over his moiety in the joint bank accounts. [7]The creation of a true joint tenancy in a bank account in New York effects a present transfer to each tenant of an alienable one-half interest therein. See Bricker v. Krimer,13 N.Y. 2d 22, 241 N.Y.S. 2d 413 (1963); In re Estates of Pinnock,83 Misc. 2d 233, 371 N.Y.S. 2d 797 (Bronx County Sur. Ct. 1975). During their joint lives, either tenant can withdraw up to one-half of the jointly held funds and thereby sever the joint tenancy as to the funds withdrawn. If, during the lives of both tenants, one withdraws an amount in excess of his one-half interest (his moiety), he becomes liable to the other tenant for the amount of such excess withdrawn. Bricker v. Krimer,supra.Even if the tenant who has wrongfully withdrawn an amount in excess of his moiety survives the other tenant, he is obligated to return to the decedent-tenant's estate the amount by which his withdrawal exceeded *57 his moiety.Kleinberg v. Heller, footnote 3 supra; Manta v. Manta,56 App. Div. 2d 624, 391 N.Y.S. 2d 680 (2d Dept. 1977) (where the estate of the deceased creator of the joint account was considered so accountable). To be sure, the withdrawing tenant is not so obligated to the decedent-tenant's estate where his withdrawals were made with the consent of the nonwithdrawing tenant or used for the benefit of the nonwithdrawing tenant. Matter of Gilgore,55 App. Div. 2d 734, 389 N.Y.S. 2d 634 (3d Dept. 1976). See Kleinberg v. Heller, footnote 3 supra.[8] Even in the absence of express consent, the wrongful withdrawer has been relieved of liability where the decedent-tenant had "clearly" intended the withdrawing tenant to draw freely from the joint account without any accountability to the decedent. See, e.g., In re Leisner's Estate,25 App. Div. 2d 844, 268 N.Y.S. 2d 375 (1st Dept. 1966), affd. 19 N.Y. 2d 869, 280 N.Y.S. 2d 671 (1967). *58 Applying New York law to the facts before us, we are satisfied that Robert was accountable to the decedent and, subsequently, to the decedent's estate, for the amounts in excess of his moiety withdrawn for his own benefit. [9] Thus, to such extent, the decedent had a claim against Robert which is includable in his gross estate under section 2033.[10]
*59 Decision will be entered under Rule 155. Footnotes
1. On May 17, 1972, a Federal gift tax return was filed for decedent in which said withdrawals were reported as gifts made during the calendar quarter ending March 31, 1972. The balances remaining in the joint accounts were reported on the estate tax return as jointly held property in the decedent's gross estate as follows: ↩
Western Savings of Buffalo [sic]
$1,330.48
Erie County Savings of Buffalo [sic]
1,358.77
Buffalo Savings Bank
1,284.85
2. Unless otherwise specified, all references are to the Internal Revenue Code of 1954, as amended and in effect at the date of death. ↩
3. At the time the deficiency notice herein was issued, on October 30, 1975, New York law was unclear as to whether withdrawals from a joint bank account, by one of the persons in whose names that account was held, in excess of that person's moiety should be treated as a nullity. Such treatment resulted in a holding that the joint account remained in existence as to such withdrawals, with the result that the withdrawer succeeded to the entire amount involved by virtue of his right of survivorship and was not accountable to the other person, in whose name the joint account was held, for the excessive withdrawals. Respondent's original position herein was that such treatment was mandated by New York law and that, consequently, the entire amount of the withdrawals was includable in decedent's gross estate under section 2040. In 1976, however, the New York Court of Appeals ruled that the "survivor-take-all" doctrine was not proper and that, absent consent of the nonwithdrawing party, the withdrawer was required to account for the excess withdrawals. Kleinberg v. Heller,38 N.Y. 2d 836, 382 N.Y.S. 2d 49 (1976), revg. 45 App. Div. 2d 514, 360 N.Y.S. 2d 422 (1st Dept. 1974), revg. In re Estate of Lang,76 Misc. 2d 636, 351 N.Y.S. 2d 884 (Bronx County Sur. Ct. 1974). See 41 Albany L. Rev. 141 (1977) for an exhaustive analysis of New York law in this area. As a result of Kleinberg v. Heller, respondent has now abandoned his original position. We note that the parties are in agreement that the balances remaining in the joint accounts at the date of death are includable in the gross estate under section 2040. Indeed, petitioner so reported them in the estate tax return. See footnote 1, supra↩.
4. Respondent makes no argument that the presumption should not be applied to him. See Rules 302 and 1101(d) and (e), Federal Rules of Evidence. See also Bremer v. Luff,7 F. Supp. 148, 155-156 (N.D.N.Y. 1933); Johnson v. Commissioner,1 T.C. 1041, 1054↩ (1943).
5. The problem involved in the instant case, as well as in contemplation-of-death cases generally, has largely been mooted by the Tax Reform Act of 1976. See Pub. L. 94-455, section 2001(a)(5), 90 Stat. 1520, 1848.↩
6. In so stating, we note that a situation involving a joint bank account of a husband and wife, such as existed in Estate of Zaiger v. Commissioner,64 T.C. 927 (1975), perhaps furnishes a better foundation for utilizing the date of the opening of the account as the critical time. Cf. Haneke v. United States,404 F. Supp. 98, 106 (D. Md. 1975), affd. in part and revd. in part 548 F. 2d 1138 (4th Cir. 1977). See also Fuchsberg, J., concurring in Kleinberg v. Heller,38 N.Y. 2d 836, 843, 382 N.Y.S. 2d 49, 52↩ (1976).
7. Respondent based his asserted deficiency on sections 2035 and 2040. After trial, the Court invited the parties to brief the applicability of section 2033 to the inclusion of the amounts in question. The parties have responded to this request without objection, but, in any event, as we view the existing record and the apparent unavailability of additional evidence, we think it is clearly within our power to consider this issue. See Smith v. Commissioner,56 T.C. 263, 291, and n. 17 (1971). Nor do we perceive any problem related to the location of the burden of proof in so doing (as to which, in any event, petitioner has made no contention). Estate of Emerson v. Commissioner,67 T.C. 612, 620↩ 1977). 8. On remand, the court held that the surviving joint tenant had not carried her burden of proof that such consent was in fact given. See Kleinberg v. Heller,53 App. Div. 2d 836, 385 N.Y.S. 2d 566↩ (1st Dept. 1976).
9. As to the February 28, 1972, withdrawals, it is clear that decedent was not capable of giving his consent thereto. Compare Estate of Bettin v. Commissioner,T.C. Memo. 1974-102, affd. per curiam 543 F. 2d 1269 (9th Cir. 1976). But even if we were to hold otherwise, we could not say that petitioner had carried his burden of proof that any such consent (as well as any consent to the January 11, 1972, withdrawal) would not have been given in contemplation of death so that the excess withdrawals would be includable under section 2035. Cf. Haneke v. United States,548 F. 2d 1138 (4th Cir. 1977), affg. in part and revg. in part 404 F. Supp. 98↩ (D. Md. 1975). 10. The fact that the liability of Robert to the estate was more apparent than real, because Robert was the sole beneficiary, does not affect this conclusion. For the computation of the amount of such claim, see In re Enis' Estate,48 Misc. 2d 548, 265 N.Y.S. 2d 506↩ (Erie County Sur. Ct. 1965).